**Boyd HANSBORO, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-74-574.**

Court of Criminal Appeals of Oklahoma.

Jan. 8, 1975.

Lyle Burris, Eufaula, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant Boyd Hansboro, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, McIntosh County, Case No. CRF–73–50, for the offense of Assault and Battery with a Deadly Weapon; his punishment was set at an indeterminate sentence of not less than one (1) year to not more than four (4) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At trial, Dr. Charles E. Mitchell from Checotah, testified that in the early evening hours of July 3, 1973, he treated Deputy Sheriff R. D. Turner for a gunshot wound to his foot, determining that a bul-

let had entered the top of the foot, exiting through the bottom. The doctor identified State's Exhibit # 1 as a photograph he had taken of the foot, and Exhibits # 2 and # 3 as X-rays he made of the foot during his examination. At the conclusion of his testimony Exhibits # 2 and # 3 were admitted into evidence.

Robert Dalton Turner, Deputy Sheriff of McIntosh County, testified that he went to the Rod and Reel Motel in Eufaula at approximately 8:00 to 8:30 p. m. on July 3rd with Eufaula city policeman Kenneth Dailey. They talked with motel manager Pete Townley and then proceeded to room 15 to serve the defendant, whom the deputy identified at trial, with an arrest warrant. He said he told the defendant he had a warrant for his arrest and that the defendant asked to read it and was allowed to do so. The deputy testified that the defendant said that he had not disturbed anyone's peace, but asked if he could go get his hat. The witness said that when the defendant returned to the door he was carrying a gun and that he said, "I am not going to jail." (Tr. 31) Deputy Turner testified that he told the defendant he would have to go with them to see the judge or the D.A., but the defendant said, "I want your gun" and attempted to grab the deputy's gun. Turner said he knocked away the defendant's drawn gun, which was cocked, and that it fired, striking him in the foot. He further testified that as soon as this happened, he grabbed the defendant's gun, knocked him to the ground and handcuffed him. The witness identified State's Exhibit # 4 as the .357 magnum he had taken from the defendant.

On cross-examination Deputy Turner admitted the defendant did not use the phrase "you son-of-a-bitch, I want your gun," (Tr. 47) in the preliminary examination account of the incident, but on re-direct he explained the apparent discrepancy in his testimony was the result of his not having been asked previously the exact words used. At this point State's Exhibit # 5,

Deputy Turner's right shoe bearing the bullet hole, was introduced and admitted into evidence.

Next to testify was Murl Howard Townley, owner of the Rod and Reel Motel, who said that on the evening of July 3rd, Kenneth Dailey and another man had come to the motel asking to serve a warrant on the defendant. He said the officers had been at room 15 for about 15 minutes, so he went to talk with them. He testified that subsequently the defendant came out of the room carrying a gun and said that he was not going anywhere with the deputy sheriff. The defendant then stuck his gun in the deputy's stomach and tried to reach the deputy's revolver. In the ensuing struggle the defendant's gun discharged.

On cross-examination Dailey stated that he did not hear the defendant call the deputy "a son-of-a-bitch" or hear the deputy say anything about the defendant "would have to see the judge of D.A."

The State concluded its case with the testimony of Kenneth Eugene Dailey, who testified that he was employed by the Eufaula Police Department on July 3, 1973. This witness identified the defendant and his gun, State's Exhibit # 4, at trial, and testified to substantially the same facts as did Deputy Turner concerning the incident. The witness also identified Exhibit # 6 as one spent shell and five live bullets removed from the defendant's gun following the shooting, and these exhibits were admitted into evidence.

Testifying in his own behalf, the defendant stated that he was 52 years of age, had lived in Eufaula all his life, and that his wife of 23 years had died in an automobile accident in which he had been seriously injured resulting in the metal plate implanted in his head. He also explained that his right hand was partially paralyzed from another accident. Giving further background information about himself, the defendant stated that he was married for a second time to Mae Turner, sister of Mary Scott, but was no longer married to her.

The defendant also testified that in March or April of 1973, while working at a filling station in Tulsa, he was shot by an assailant during a robbery attempt. At that time Defense Exhibit # 1, a newspaper clipping describing the robbery, was admitted into evidence. The defendant said that after the robbery attempt, when he returned to work he kept a gun with him for protection. He testified that he had only worked two or three weeks after he recovered from the robbery injuries when he decided it was unsafe and quit, coming to Eufaula with this same gun, which he identified as State's Exhibit # 4.

The defendant explained that on July 3, 1973, between 8:00 and 8:30 p. m., as he was getting ready for bed, Deputy Turner had come to his motel room saying he had an arrest warrant for the defendant on a Disturbing the Peace charge filed by his ex-wife's sister. The defendant said he asked to be excused to go get dressed and that as he was getting dressed he noticed his gun. After dressing he said he took it with him to the door and went up to the deputy and told him he wanted to give it to him for safekeeping. The defendant testified that the deputy hit his hand and the gun discharged. Explaining why he was holding the gun by the handle, the defendant reiterated that due to the paralysis in his right hand he was unable to grasp the gun by the barrel and had to hold it by the butt. He further denied, at any time, having the hammer cocked or saying that he was not going to jail. He also said he did not try to disarm the deputy or hear the deputy say anything about him having to "talk to a judge or the D.A." The defendant concluded his testimony asserting that after the accidental shooting, he was thrown to the ground, knocked unconscious and received medical attention as a result of the injuries inflicted at his arrest. On cross-examination the defendant attested that he had never before been convicted of any misdemeanor or felony charge.

The defense rested after calling three witnesses who testified as to the good character and reputation of the defendant in the community. The witnesses, M. C. Toon (County Superintendent of McIntosh Schools), Lyle Shroyer (a local rancher), and Ben Marshall (a dry cleaner), all testified that they had known the defendant for many years and that he was a peaceful, law-abiding citizen.

In his first proposition the defendant contends that he was forced to trial upon a higher degree of crime than that which he was bound over, and accordingly the Court erred in overruling his Motion to Quash and Demurrer to the Information. The defendant bases his contention on the fact that at the end of the preliminary examination the committing magistrate said:

"  .  .  .  it is the finding of the Court that the crime of Assault and Battery with a Dangerous Weapon has been committed; there is probable cause to believe the Defendant committed the crime  .  .  ." (P.H. Tr. 43)

The record reveals, however, that the written committing order, which under 22 O. S.1971, § 264 is mandatory, and on which the information read at trial was based, bound the defendant over on the crime of Assault and Battery with a *Deadly* Weapon. [Emphasis added]

In view of the fact that the original charge read at the preliminary hearing was for Assault and Battery with a Deadly Weapon, and that the official order was for this same offense, as was the information on which the defendant was duly arraigned, we find any inconsistency between the oral pronouncement of the examining magistrate and the official order was merely an inadvertent mistake.

We would further note that althought the defendant did file a pre-trial Motion to Quash and a Demurrer to the information, these actions were taken before the arraignment and were evidently not based on the discrepancy between the preliminary examination oral statement and the official commitment order, and

further the record fails to reveal any mention of the alleged error at the arraignment or any time before the trial. Even if there was error in the final commitment order, which we hold there was not, the defendant failed to make a timely objection and thereby waived consideration of the issue. See Lung v. State, Okl.Cr., 420 P. 2d 158 (1966). Accordingly, we find defendant's first contention to be without merit.

■ In his next proposition the defendant alleges that reversible error occurred in the cross-examination of defense character witnesses who were asked by the prosecuting attorney if they had knowledge of certain other alleged misconduct of the defendant. The defendant cites Miller v. State, Okl.Cr., 418 P.2d 220 (1966), however, we find that under the guidelines for cross-examination of character witnesses as set forth in that case, no error did occur in the instant case. In Miller v. State, supra, we held that it is permissible to ask the character witness on cross-examination if he had heard of various specific acts of the defendant inconsistent with a good reputation. This Court also provided that a preliminary inquiry should be conducted by the trial court to determine that there was a basis for the prosecutor's questions to prevent the examiner from conducting the examination in bad faith.

■ In the instant case a thorough preliminary inquiry, out of the hearing of the jury, was made by the trial court (Tr. 80–84), during which the prosecutor substantiated the basis for the questions he was prepared to ask defense character witnesses. Accordingly, since the scope of cross-examination is within the sound discretion of the trial court and in view of the fact that guidelines to assure good faith were followed, we find this proposition to be without merit.

■ The defendant's third proposition alleges that he was denied a fair trial due to improper conduct of the prosecuting at-torneys. In particular, he refers to several instances when he asked that the District Attorney be admonished to speak more quietly to his Assistant and to certain inferences made in the State's closing argument.

In regard to the first of these allegations, we observe that the District Attorney was duly admonished to speak more quietly and further that the defendant fails to show how the alleged error resulted in prejudice to the defendant. In Samples v. State, Okl.Cr., 337 P.2d 756 (1959), this Court held:

"  . . . [T]he principle long adhered to by this court that a conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can say that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might, in some degree, have influenced the verdict against the defendant."

In the instant case we do not find that the defendant was prejudiced by the conduct.

■ In response to defendant's second allegation that improper statements were made in the closing argument, we hold, as this Court has repeatedly held, that only when argument by counsel for the State is grossly improper and unwarranted upon some point can a reversal be granted for improper argument. See Noble v. State, Okl.Cr., 497 P.2d 452 (1972).

■ In the instant case, we fail to see how the complained of statements such as " . . . turn him loose to walk the streets with his pistol" (Tr. 157) or "Mr. Turner was shot here trying to protect himself and he is lucky to be here," (Tr. 157) two of the remarks singled out by the defendant as prejudicial, constitute error in view of the evidence adduced at trial and the logical inferences to be drawn therefrom. Accordingly, we find the third proposition of error to be without merit.

■ The defendant next contends that the verdict rendered by the jury was irreg-

ular in form and indefinite on its face. At the trial, the verdict rendered read:

"We the jury, drawn, empaneled and sworn in the above entitled cause do upon our oath find the defendant Guilty of Assault & Battery with a Deadly Weapon as charged in the Information herein and assess his punishment in the penitentiary for one year to no more than four years; signed by Bobby Joe Starkey, Foreman." (Tr. 162)

Following the reading of the verdict, the following objection was made:

"MR. BURRIS: Your Honor, as far as the verdict it shows one year to four years it is indefinite and uncertain and we didn't ask for an indeterminate."

In regard to the defendant's allegation to the length of the sentence, this Court held in the 5th paragraph of the Syllabus in Disheroon v. State, Okl.Cr., 357 P.2d. 236 (1960):

"Where from an examination of the verdict and the entire record, the intent and purpose of the jury as expressed in their verdict may be clearly ascertained, it will be upheld."

On appeal the defendant further alleges that his name was omitted from the verdict form, thus rendering it invalid on its face. With this contention we cannot agree on the basis of Disheroon v. State, supra in that even if his name was not filled in on the form, the jury that returned the verdict in his trial was clearly not confused about the identity of the defendant. We also observe that the objection made at trial to the verdict did not refer to the absence of the defendant's name, thus the omission was waived. In Born v. State, Okl.Cr., 397 P.2d 924 (1964), we held:

"Objection to the form of the verdict should be made by counsel at the time of its return, *with the grounds of the objection specified,* to give the trial court the opportunity to have the verdict corrected before discharge of the jury." (Emphasis added)

In view of the fact that the sentence handed down by the jury was not so indefinite as to render its meaning unclear, and in view of the fact that the defendant made no motion to have his name added to the verdict form before the jury was dismissed, we find this proposition to be without merit.

■ The defendant lastly contends that error occurred in his sentencing when the trial court sentenced him to "an indeterminate sentence of one year to no more than four years." (Tr. 165). We fail to see merit in this proposition in that the length of the sentence imposed was not altered by the addition of the word "indeterminate" and the sentence was in strict compliance with the verdict rendered by the jury. In Curry v. Page, Okl.Cr., 484 P.2d 887 (1971), we said it is not error for the court not to instruct on the discretionary alternative of an indeterminate sentence, so no error occurred in the original verdict rendered by the jury. When the trial court formally sentenced the defendant consistently with the errorless verdict of the jury, again no error occurred. See 22 O.S.1971, § 926.

After a thorough review of the record, we find no error requiring modification or reversal, and therefore, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.