Dorothy DeLAUNE and Carroll DeLaune, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F-76-768.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1977.

Amos E. Black, III, Anadarko, for appellants.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., Janet Cox, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellants, Dorothy DeLaune and Carroll DeLaune, hereinafter referred to as defendants, were charged, tried by jury and convicted in District Court, Caddo County, Oklahoma, for the offense of Embezzlement of State Funds, in violation of 21 O.S.1971, § 341. Punishment was set at five (5) years' imprisonment, with two and one-half (2½) years suspended, and a fine of Five Hundred ($500.00) Dollars for defendant Dorothy DeLaune; and, three (3) years' imprisonment, with two (2) years suspended, and a fine of Five Hundred ($500.00) Dollars for defendant Carroll DeLaune. Defendants have perfected this timely appeal.

Defendants, employees of the Kiowa Housing Authority (a State agency created under 63 O.S.1971, § 1057), were charged along with four others with embezzling more than $10,000.00 between July 3, 1973, and February 1, 1975. Defendant Dorothy DeLaune was originally employed by the Authority as a clerk, and became Acting Executive Director on August 15, 1973. Her husband, defendant Carroll DeLaune, was employed by the Authority as an overseer on a housing rebuilding project.

Frances Oheltoint, an investigator for the Oklahoma Indian Rights Association, testified that defendant Dorothy gave her three containers of documents shortly before the Caddo County Grand Jury met in early 1975. Her stated reason was to aid the grand jury, and to "get Vincent Bointy," chairman of the Authority at the time, and a co-defendant. When asked what defendant Dorothy told her about the documents, the witness stated that:

"A. She told me that they had falsified some of the bills and to give them amounts of money that they were not entitled to. She told me that they had paid for fences that were not built, and that they had falsified other things to give Mr. Bointy money which he needed when he was in the hospital.

\* \* \* \* \* \*

"Q. And she said 'they' falsified them. Who is 'they', Mrs. Oheltoint?
"A. Herself and the people she was making reference to, LaVerne Satepeahtaw and Vincent Bointy."

Following a Jackson-Denno hearing out of presence of the jury, the court overruled a motion to suppress, and allowed into evidence grand jury testimony of both defendants.

In that testimony defendant Dorothy said she often signed blank checks and left them in her desk as she was often away from the office, and bills had to be paid. As executive director, hers was one of two signatures needed on all Authority checks. She testified she signed a check for $1,704.08 to LaVerne Satepeahtaw for drilling a water well that, in fact, never was drilled.

She admitted taking $50.00 in Authority funds for her own use and cashing a $500.00 check for Bointy, entered on the books as a payroll advance for her. She said she authorized her own salary to continue when she left the job for a time in early 1974, and when asked if she were justified in doing it she responded:

"A. No, not now.

"Q. You did at the time?

"A. I don't think anything that went on there was justified.

"Q. Do you think this was illegal to do this?

"A. Yes, very much so. I should have come forward with this a long time ago. . . ."

During his grand jury testimony, defendant Carroll said:

"A. There was two occasions where I gave him (Vincent Bointy) some money on a kick-back on a deal.

"Q. Can you explain the circumstances surrounding this transfer of money?

"A. There was one occasion where he and I split up a thousand dollars. He got five hundred and I got five hundred.

"Q. How was this done?

"A. Well, a check was made out to me and I cashed the check and brought $500.00 back to him.

\* \* \* \* \* \*

"Q. What were you to do, if anything, for the $500.00 that you testified that you received when you cashed that check?

"A. What was I supposed to do? Nothing, but just go cash the check and bring the money back.

"Q. Just the cashing of the check and bringing the money back?

"A. Right. That was all.

"Q. No promise to do anything?

"A. No, there was no promise to do anything at all. Just the use of my name to cash the check and that was the only thing."

Defendant Carroll said that similar transactions occurred when he received a check for $1,181.25. He said he deposited the check in his personal account, took out $473.00, and split this amount with Bointy. The amount he actually deposited—$708.00 —was owed him for work already done. The grand jury asked defendant if he knew this to be unlawful, and the defendant responded, "Yes, I knew that, but I needed to get paid."

Orville Brewer, supervisor auditor of the Department of Housing and Urban Development (HUD), testified that defendant Dorothy began drawing biweekly paychecks of $230.00, which increased to $375.00 when she was named Acting Executive Director on August 17, 1973. On January 3, 1974, her salary checks increased to $550.00. Brewer said he could find no authorization for that increase, although admitted that copies of Authority minutes and resolutions were missing for a period during that time. Brewer determined that between August 17, 1973, and July 11, 1974, defendant should have received a gross salary of $8,812.50, figured at the authorized $375.00 biweekly level. Her bank account, however, reflected deposits of $13,075.20 identified as "salary" and $3,075.24 not identified as salary. This made a total excess payment to defendant Dorothy of $7,262.94.

Brewer said the overpayment could have been the result of reimbursement for mileage, per diem, or travel expenses, but added that other employees were issued separate checks for travel expenses.

Curtis J. Greer, a private accountant hired by the Authority, testified that his investigation reflected an overpayment of salary and other Authority funds to defendant Dorothy of $7,392.81. He, like Brewer, found no support for the salary increase to $550.00. He said Authority records reflected $8,129.13 in collections which were never deposited, and that overpayments in salaries to other employees totalled $23,-256.32. He said that all the checks were signed by defendant Dorothy and one of the Authority officials, usually Bointy.

Greer said that in computing defendant Dorothy's overpayment he used a salary figure of $550.00 biweekly. If he had used the highest authorized figure of $375.00, the

overpayment would have been $2,975.00 greater.

George Poolaw, former Authority commissioner, said defendant Dorothy never had been authorized to receive more than the former executive director had received, $375.00 biweekly.

Vincent Bointy, former chairman of the Authority and a co-defendant, testified for the defense that he did not recall whether the Authority authorized a salary increase for defendant Dorothy to $550.00.

Martha Depel Myers, who was Executive Director of the Authority when defendant Dorothy was account clerk, testified to finding in defendant Dorothy's desk a temporary receipt book which listed collections not posted in the permanent ledger.

Darrell Vaught, HUD auditor, testified that his audit of the cost of rebuilding a house included a check for $1,181.25, listed under costs the exact amount defendant Carroll said he cashed as part of a kickback scheme. His audit of the defendants' bank account showed, for a period between December 27, 1973, and February 2, 1974, total deposits labeled as Authority funds of $5,356.86. Included were two checks not listed as salary.

Dr. Everett Rhoades, Vice Chairman of the Kiowa Tribe, said the defendants talked to him several times before the grand jury met. He said he was "absolutely certain" that defendant Dorothy had taken "a considerable amount of money," and added, "She had told me that she had taken the money." He also said that while Dorothy was waiting to give her grand jury testimony she asked him for a tranquilizer and he gave her about 20 Librium or Valium tablets, but did not see her take them.

In their first assignment of error, the defendants contend the trial court erred in failing to sustain defendant Dorothy's plea of former jeopardy. The defendant was charged, tried and acquitted in an earlier trial of embezzling $800.00 from the Kiowa Housing Authority during the time period covered in the present case. Prior to the presentation of any evidence, the trial court instructed the prosecutor to exclude any evidence of the $800.00 check for which the defendant had already been tried. Despite the trial court's order, the $800.00 check was actually admitted into evidence along with several other checks as State's Exhibit No. 10.

While we think it would have been the better practice for the State to have tried Ms. DeLaune all at one trial for as much of the embezzling as they knew about, this Court has applied the same evidence rather the same transaction test in determining whether a defendant can be charged with more than one crime or whether in fact only one crime was committed. That is, if the two crimes charged each require the proof of at least one fact which is not required to be proved in the other, the defendant can be charged with more than one crime. See, *Webb v. State,* Okl.Cr., 538 P.2d 1054 (1975). Therefore, defendant's acquittal on the charge involving the $800.00 check is not a bar to her trial on other embezzlement which took place during the period between July 3, 1973, and February 1, 1975.

However, as defendant had already been charged and acquitted on the $800.00 check, the trial judge was correct in ordering the prosecution to omit any evidence of that check. Jeopardy had already attached with regard to that check. Further, we view the admission of that check along with the testimony regarding all the checks in Exhibit No. 10 as being a blatant disregard of the order of the lower court. Therefore, we hold that under other circumstances this error would be sufficient to reverse this conviction as to the defendant Dorothy DeLaune and cause this case to be remanded for a new trial with no reference being made to the $800.00 check on which the defendant was previously charged and acquitted. This aspect of the trial will be discussed further herein.

In the second assignment of error, defendant Carroll contends the trial court erred when it failed to sustain his demurrer to the State's evidence. Defendant argues that his grand jury testimony is a confes-

sion and as such must be corroborated. *Bonicelli v. State,* Okl.Cr., 339 P.2d 1063 (1959). Specifically, defendant admits he cashed a $1,181.25 check and retained $708.00 as wages owed him, but argues there was no corroboration for his grand jury testimony that he divided the remainder with Vincent Bointy.

■ This assignment of error deals with proof of the crime's corpus delicti—the substantive fact that a crime has been committed. As we stated in *Hall v. State,* Okl.Cr., 538 P.2d 1113, 1117 (1975):

".  .  .   The general rule is that in every criminal prosecution the burden rests on the State to prove the corpus delicti beyond a reasonable doubt. This must be proven by evidence other than a confession, the confession being admissible merely for the purpose of connecting the accused with the offense charged. .  .  ." (Citations omitted)

Defendant argues in essence that the crime of embezzling State funds was not proved outside of his confession.

■ The State argues that the corpus delicti may be proven through circumstantial evidence, citing *Potter v. State,* Okl.Cr., 511 P.2d 1120 (1973). The defendant Carroll DeLaune cannot seriously argue that there was not sufficient evidence presented at his trial to establish a corpus delicti. This clearly was not and could not have been argued by his wife and co-defendant. The question actually raised is whether there is sufficient evidence to connect this defendant with the crime. We find that the checks made out to this defendant, together with the inferences that may be gathered from the transactions made through his joint checking account, are sufficient to corroborate his confession made before the grand jury. See, *Raybourn v. State,* Okl.Cr., 339 P.2d 539 (1958).

■ In the defendants' third assignment of error they contend the trial court erred in restricting cross-examination of Martha Depel Myers, former Executive Director of the Authority, in connection with $281,000.00 in Authority funds for which audi-

tors said they could find no authorized disbursement.

Martha Depel Myers was Executive Director of the Authority until August, 1973. Defendants are charged in the information with embezzling State funds between July 3, 1973, and February 1, 1973. It is the overlapping month about which defendants wished to question Ms. Myers, but were prevented from doing by the trial court on grounds of immateriality.

The $281,000.00 was part of $550,000.00 received by the Authority in July of 1973, and was allegedly disbursed by Martha Depel Myers before defendant Dorothy took over as executive director. This sum, defendants contend, was tied into $208,000.00 in unsupported disbursements brought out by the prosecution. Defendants argue they were denied their right to impeach the testimony of witness Depel by the trial court's action, citing as authority *Wiley v. State,* Okl.Cr., 349 P.2d 30 (1960).

However, *Wiley* is clearly distinguishable in that it referred to money received directly from private citizens to pay traffic fines. The case at bar deals with money once it was received by the agency and then embezzled.

The defendants are accused in the information only of embezzling more than $10,000.00. At no time during the trial were defendants required to account for the $550,000.00 received from HUD. We find no error in refusing to allow cross-examination of witness Depel beyond the bounds of materiality.

■ As defendants' fourth assignment of error they contend there was no proper foundation for the introduction of photocopies of checks and that *Benefield v. State,* Okl.Cr., 355 P.2d 874 (1960), held that the introduction of a photostat is discretionary with the trial court and only in the case of an abuse of discretion will this Court reverse. Defendants claim an abuse of discretion.

Defendant does not specify which set of photostats, or which exhibit, he takes issue with, but a reading of the transcript indi-

cates it is probably State's Exhibits Nos. 10 and 10A which constitute photostats of microfilmed records of the Washita Valley Bank which a teller made and gave to witness Darrell Vaught who sponsored them. Vaught testified he used microfilmed records in his audit only when the originals were not available. He said he saw the copies made and they were accurate copies of the microfilm. The bank teller also testified that they were accurate copies of the original documents.

Under the best evidence rule as delineated in *Hayes v. State,* Okl.Cr., 397 P.2d 524, 527 (1964):

" 'For the purpose of proving the *content of a writing,* the original writing itself is regarded as the primary evidence, and secondary evidence is inadmissible unless failure to offer the original is satisfactorily explained.' (Emphasis ours)."

In that the witness testified the original records could not be found, and he saw the photostats made, we find the exhibit was properly admitted into evidence, and dismiss this assignment of error.

■ As defendants' fifth and final assignment of error, they contend the prosecutor made improper statements which denied them a fair trial. They specifically object to the following statement made during closing argument: "They are not going to testify to something that implicates themselves."

The statement, however, takes on a different meaning when seen in context:

". . . How about us just trying Carroll and Dorothy DeLaune? He [Amos Black, defense attorney, during his closing argument] said they didn't testify to any of this evidence before the grand jury. He is absolutely right. They are not going to testify to something that implicates themselves. That is what was throwed out here to present to you in this case. It's what it presents to them. "MR. BLACK: Your Honor, they did testify to the evidence he has got out there. "THE COURT: This is argument by counsel."

It is clear the prosecutor was speaking of grand jury testimony during which the defendants did voluntarily testify. The fact that they did not testify on certain items of trial evidence can have no bearing on the argument of defendant here. Furthermore, the prosecution was answering a comment made earlier by the defense attorney. We therefore dismiss this assignment of error.

■ Defendant also argues reversible error when the prosecutor made this comment, "You talk about corruption and scandal in government, it starts right here at home, ladies and gentlemen." Defendant failed to enter his objection, and therefore this Court will not entertain his objection at this time. *Williams v. State,* Okl.Cr., 542 P.2d 554 (1975). At any rate, we find the above comment to be well within the accepted realm of argument allowed both parties during closing argument. *Hansboro v. State,* Okl.Cr., 530 P.2d 1038 (1975). We therefore dismiss this assignment of error.

■ With reference to the earlier complaint herein of former jeopardy by defendant Dorothy DeLaune, there is no doubt whatsoever that in the event a new trial were ordered, because of the error committed when the court allowed entry of the $800.00 check into evidence, Dorothy DeLaune would be found guilty again on the same evidence excluding the questioned check. Therefore, this Court is of the opinion that the ends of justice will be better served if her sentence is modified. It is therefore ordered that the sentence imposed on defendant Dorothy shall be MODIFIED from five (5) years to three and one-half (3½) years under the direction and control of the State Department of Corrections, with two and one-half (2½) years suspended and assessed a fine of Five Hundred ($500.00) Dollars, and as modified the judgment and sentence shall be affirmed. It is further ordered that the District Court, Caddo County, shall correct the judgment and sentence to reflect this modification.

For the reasons set out hereinbefore the judgment and sentence imposed on Carroll DeLaune is *AFFIRMED.*

BUSSEY, P. J., concurs.