**Timothy Odell SIMMS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–8.**

Court of Criminal Appeals of Oklahoma.

April 10, 1987.

Joe P. Robertson, Wagoner, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Timothy Odell Simms, was convicted of the crimes of Rape in the First Degree, Assault and Battery by Means or Force as is Likely to Produce Death, and Assault and Battery with a Deadly Weapon, in the District Court of Wagoner County, in Case No. CRF–83–170 and was sentenced to seventy-five (75) years', twenty (20) years' and twenty (20) years' imprisonment, respectively, and he appeals. We affirm.

On the evening of October 29, 1983, Gregory Larue Hytche, Tommy Asberry and appellant drove to Marshall's Bar in Tullahassee, Oklahoma. There was a party at the bar that night and approximately twenty-five (25) people were present. The victim, J.S.F., who was fifteen-years-old, arrived at the party after appellant. J.S.F. knew appellant, and he had taken her home from Marshall's Bar on the previous Friday night.

At approximately 2:30 a.m. on October 30, 1983, J.S.F. went outside the bar and talked with appellant and his cousin Tommy Asberry. Gregory Hytche was in the car waiting to go home. Subsequently, appellant told J.S.F. that he had something to tell her and led her from the car. When Hytche and Asberry observed appellant walking around the building, they got out of the car and caught up with him and J.S.F. Appellant told them he was going to talk to the girl but gave them the car keys so that they could turn on the heater.

Hytche and Asberry then went back to the car and fell asleep.

Appellant led J.S.F. to a cleared area between the post office and another building. The next thing J.S.F. knew appellant was on top of her. When she asked him to get off of her so she could go home, he choked her for a few seconds. She again pleaded with him to let her go home to take care of her baby, but he started choking her again, and she lost consciousness. The next thing she remembered was waking briefly and observing a friend's (Johnny Moore's) mother going into the back door of her home. Before she could scream she again lost consciousness. She awoke again and remembers being kicked and stomped by appellant. She lost consciousness again and did not regain consciousness until she was at the hospital.

While she was unconscious, Johnny Moore, a fifteen (15) year old neighbor, witnessed the brutal attack. He went out the back door of his house when he heard hollering that sounded like a man's voice. When he got outside he observed a man, with his pants unbuttoned, on top of a naked woman. He heard the man say, "I asked you to suck me, but you wouldn't." Subsequently, he saw the man on top of the woman "having sex with her and stuff," and "humping her." He then observed the man turn the woman over and start having sex with her from behind. Moore then heard the victim yell, "Stop, stop, you're killing me," but the man did not cease the attack. Instead, the man got on his knees and began to fondle her private parts with his hands. When he finished fondling her, he punched her twice with his fists and began to stomp the victim in the head with his boots approximately fifteen (15)—twenty (20) times. The man then drug the victim's body between two buildings, and after stomping her head with his boots several more times, he bent down and checked the victim's pulse. At that point he located a bottle, broke it and Moore observed the man's arm moving near the victim's body.

Appellant then left the victim and proceeded toward the car, but Asberry and Hytche, who had left the car looking for him, met appellant before he walked very far, and Hytche testified that when he first saw him, appellant was buckling his pants. Once the three men were in the car, Hytche noticed that appellant's hands were bloody and that there was blood on both legs of his pants from the calf down. Asberry observed grass stains on appellant and blood on the back sides of his hands. During the drive back to Coweta, Oklahoma, appellant squeezed his fists and said that he had not known that he had that much power in his right hand, and said that he had to hit her because she called his name. Appellant also said that he had to "go ahead and knock her off."

In the meantime, Johnny Moore told a friend about the incident and the police were contacted. When medical personnel arrived at the scene, they found that the victim had massive head injuries and a lacerated throat. She was first taken to the emergency room at the Wagoner County Hospital and then flown by helicopter to St. Francis Hospital in Tulsa. She almost died when she was carried onto the helicopter and had to be resuscitated before they could get her to Tulsa.

At trial, the State presented testimony that the blood stains on the legs and bottom portion of appellant's pants was blood group A type, the victim's blood type. Johnny Moore did not identify appellant at trial, but J.S.F. identified appellant as the man who attacked her.

■ For his first assignment of error appellant contends that the evidence is insufficient to sustain a conviction for the offense of Rape in the First Degree in that the State presented insufficient evidence of penetration to support the conviction.

When the sufficiency of the evidence presented at trial is challenged on appeal, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In the instant case, the victim was unable to testify whether appellant achieved penetration since she was unconscious during most of the attack and cannot remember all the details of the attack due to the severe head injuries she incurred. However, the State presented the testimony of Johnny Moore, an eyewitness, who testified in pertinent part:

Then he was on top of her. Then he was having sex with her and stuff....

He was just—he had got on top of her, and he just started humping her.... (Tr. 356–57)

He turned her over on her back. Then he started from behind. Then she started hollering, 'Stop, stop. You're killing me.' He just—he kept on. Then after he turned her over that's when he got on his knees. Then it looked like he started playing with her or something. He was on his knees. He started like he was playing, you know, with her privacy. (Tr. 358).

Viewed in the light most favorable to the State, sufficient evidence exists for a rational factfinder to conclude beyond a reasonable doubt that appellant committed First Degree Rape. The appellant had his pants unbuttoned, but not removed, and was "humping" on the victim's naked body, and "having sex with her and stuff." The victim's statement, "Stop, stop. You're killing me," when appellant "turned her on her back" and "started from behind," is consistent with the pain of non-consensual penetration. Although the medical testimony at trial failed to establish the presence of semen or sperm in the samples of body fluids taken from the victim almost four days after the incident, at most, this absence would only lead one to conclude that appellant failed to ejaculate. Accordingly, we find that the evidence presented at trial is sufficient to sustain a conviction for First Degree Rape.

■ In his second assignment of error appellant asserts that the constitutional prohibition against double jeopardy bars the State from prosecuting him for both Assault and Battery by Means or Force as is Likely to Produce Death and Assault and Battery with a Deadly Weapon.

This Court has consistently held that if two crimes charged each require the proof of at least one fact which is not required to be proved in the other, the defendant can be charged with more than one crime. *DeLaune v. State*, 569 P.2d 463, 467 (Okl.Cr. 1977). Moreover, the fact that the assaults occurred in rapid succession does not, standing alone, negate the fact that separate crimes were committed. *Nevaquaya v. State*, 614 P.2d 82 (Okl.Cr.1980). According to the testimony of the eyewitness, the appellant first assaulted the victim by hitting her repeatedly with his fists, choking her and stomping her repeatedly with his boots. After stomping her head approximately fifteen (15)—twenty (20) times with his boots, appellant dragged her body between two buildings and stomped her head approximately twenty (20) more times. At that point appellant bend down and checked the victim's pulse, and then he located a bottle, broke it and attacked the unconscious victim with the broken bottle.

Clearly, the facts in the present case reflect that appellant attacked the victim at two different times, although in rapid succession, using two different instruments of assault, and that the instrument used in the latter assault was a deadly weapon, a broken bottle. Moreover, the evidence necessary to prove Assault and Battery with a Deadly Weapon requires the proof of at least one fact which is not required to prove Assault and Battery by Means or Force as is Likely to Produce Death. Therefore, we find this assignment of error to be without merit.

Accordingly, the Judgments and Sentences are AFFIRMED.

BRETT, P.J., and PARKS, J., concur.