**UNITED STATES of America, Plaintiff,**

v.

**Joe Frank MENDONCA, Defendant.**

**Crim. No. 76–4.**

United States District Court,
W. D. Oklahoma,
Criminal Division.

Jan. 28, 1976.

David L. Russell, Oklahoma City, Okl., for plaintiff.

Ralph Samara, Oklahoma City, Okl., for defendant.

## ORDER

DAUGHERTY, Chief Judge.

The above Defendant has moved to suppress as evidence against him the weapons described in the two counts of the Indictment herein. The Defendant asserts the Government obtained these weapons through an illegal search and seizure. The Government opposes the Motion claiming that the weapons were legally obtained from the premises in which they were located in a legal search of said premises accomplished by and through the free and voluntary consent of one of the proprietors of said premises. The Court has conducted an evidentiary hearing on the Motion and concludes that the same should be overruled.

■ The evidence adduced at the hearing on the Motion reveals that the Police authorities through an informer learned that two illegal firearms were stashed or hidden on the premises of the Country Plumbing Store, Inc. located at 1201 South May Avenue in Oklahoma City, Oklahoma. They obtained a search warrant but upon arriving at the premises the same were locked and no one was present upon whom the search warrant could be served. They noticed that the premises were protected by a burglar alarm company whereupon they called the company and asked it to contact the owner and have him come to the premises. This was done and very shortly Mr. Roy C. Brown arrived. Mr. Brown with his wife and two sons was a proprietor of the business located at 1201 South May Avenue in Oklahoma City, Oklahoma and as such

proprietor had control of the premises. The Officers identified themselves to Mr. Brown, advised him that they had reason to believe illegal weapons were stashed in his place of business and asked his consent to enter and search the premises for such weapons. Mr. Brown readily agreed verbally to the search of his premises[1], unlocked the door and all entered the building. Before the search began the Officers produced a written consent to search form which Mr. Brown signed. The search produced the two illegal weapons to the surprise of Mr. Brown.

■ The Court finds from the evidence presented that the search and seizure was legally accomplished through a free and voluntary consent to the search by a proprietor of the premises. Though the Officers had a search warrant they did not use the same as a proprietor freely and voluntarily consented to the search. The Court further finds from the evidence that the Police authorities made no promises, express or implied, to or used any force, threats or coercion, express or implied, against Mr. Brown in the matter of obtaining his consent to the search. In the totality of such circumstances in this case, the search was not in violation of the Fourth Amendment to the United States Constitution. *Scheckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

The Defendant attempts to rely herein on an involuntary consent to search on the basis that the Police authorities before obtaining the consent of Mr. Brown advised him that they had a search warrant, or could get a search warrant or would search the premises either with or without a search warrant and that he might as well consent to the search. If the evidence supported this contention indeed the search would be invalid and the seizure of the two weapons would have been illegally obtained. This type of search is condemned in

*Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

However, the evidence does not support Defendant's contention. The Officers denied making the alleged statements to Mr. Brown about a search warrant. They denied having any discussion with Mr. Brown about a search warrant or the search warrant that they had but did not use. Mr. Brown only vaguely remembers some discussion about a search warrant but testified definitely that it occurred after he had verbally given the consent to search and all had entered the building and had nothing to do with his consent to search as he had nothing to hide. Mr. Brown's testimony was somewhat confused as to whether the discussion he heard about a search warrant was before or after he signed the written consent to search form. But he definitely testified that it was after he gave his verbal consent to the search and after he had unlocked and those present had entered the building. The Court finds that Mr. Brown had no prior knowledge of the search warrant before he gave his free and voluntary consent to search the premises. See *Leeper v. United States*, 446 F.2d 281 (Tenth Cir. 1971) for an excellent discussion regarding voluntary consent to search premises.

The Court therefore concludes from the evidence presented that Mr. Brown freely and voluntarily consented to the search and as a proprietor of the premises he had full authority to give such consent. Further, that such consent was not obtained by promises, force, threats or coercion and particularly and specifically was not obtained by any discussion or threat about a search warrant as claimed by the Defendant.

In view of the foregoing findings and conclusions, the Motion of Defendant to suppress the two weapons as evidence herein should be overruled and the two weapons should be admitted in evidence at the forthcoming jury trial herein.

---

1. When two or more persons have equal rights to the use and occupation of a premise at the time of a search, the courts have held that any such person could give consent to a search of the premises. *White v. United States*, 444 F.2d 724 (Tenth Cir. 1971); *United States v. Wixom*, 441 F.2d 623 (Seventh Cir. 1971); *United States v. Hughes*, 441 F.2d 12 (Fifth Cir. 1971); *United States v. Gargiso*, 456 F.2d 584 (Second Cir. 1972).