**Malcolm Rent JOHNSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–82–312.**

Court of Criminal Appeals of Oklahoma.

Jan. 16, 1987.

Rehearing Denied Feb. 9, 1987.

Thomas J. Ray, Jr., Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

**OPINION**

BUSSEY, Judge:

On appeal from his sentence of death for the murder of a seventy-six-year-old woman, Malcolm Rent Johnson presents seventeen (17) assignments of error.

The victim, Ura Thompson, was found dead and partially decomposed in her apartment on October 27, 1981. The medical examiner determined that the cause of death was suffocation, and that the victim suffered blows to the head and jaw, as well as forced intercourse.

Jewelry, furs and other valuables were discovered missing from the victim's apartment. The police were given consent to search the apartment where appellant lived with his girlfriend. The victim's typewriter, rings, watch, antique jar, keyrings, cigarette case, and hand mirror were among the items found in the apartment. The specimens of hair and body fluids obtained from appellant were found to match the unknowns discovered in the victim's apartment.

I

As his second assignment of error (BI), appellant asserts that two prospective jurors were excluded for cause in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Relevant portions of the record are set out in the margin.[1] Careful reading of the voir dire

1. The voir dire of juror Mason culminated in the following:

THE COURT: Mr. Mason, if you found beyond a reasonable doubt that the Defendant was guilty of Murder in the First Degree, and

reveals that each venireman excluded had views concerning the death penalty which would substantially impair his ability to serve as a juror in this case. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). This is the proper standard of review. Accordingly, this assignment of error is without merit.

## II

As his third assignment of error (BII), appellant complains of the exclusion of negroes from the jury in violation of the Sixth Amendment to the United States Constitution. The record reflects that the prosecutor used peremptory challenges to exclude the last three black veniremen from the panel. (Tr. 408–409). The judge denied a defense motion for mistrial, finding no evidence of intentional discrimination. Defense counsel argued that the State excludes black veniremen from juries whenever a black is charged with killing a white. However, he offered no evidence in support of that assertion.

Until recently, the prosecutor's exercise of peremptory challenges was essentially inscrutable under the authority of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). There was a presumption that the prosecutor used the State's peremptory challenges to obtain a fair and impartial jury. The presumption was not overcome by allegations that all negroes were removed from the jury, or that they were removed from the jury because they were negroes. *See, Lee v. State*, 637 P.2d

879, 881–82 (Okl.Cr.1981) (discussing the requirements of *Swain* ).

In the recent case of *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the prosecutor may not use peremptory challenges to racially discriminate against a criminal defendant. No longer are peremptory challenges beyond review. If a defendant establishes prima facie the discriminatory use of peremptories, the burden shifts to the prosecutor to explain his or her actions. *Id.* at ——, 106 S.Ct. at 1723.

To establish a prima facie case of purposeful discrimination in the selection of the petit jury, the defendant must demonstrate: first, that he or she is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove from the venire members of that race; second, a defendant can rely on the fact that the prosecutor can use peremptories as a tool with which to discriminate; and third, that the facts and other relevant circumstances raise an inference that the prosecutor used that practice to discriminate against appellant. *Id.* at ——, 106 S.Ct. at 1723. Once a prima facie showing is made, the prosecutor has the burden to offer a neutral explanation for challenging black jurors.

But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged the jurors of the defendant's race

if under the evidence, facts and circumstances of the case, the law would permit you to consider a sentence of death, are your reservations about the Death Penalty such, that regardless of the law, the facts and circumstances of the case that you would not consider inflicting the Death Penalty?
PROSPECTIVE JUROR MASON: Yes, sir.
The voir dire of juror Herbert was rather lengthy, but is well summarized in the following passage:
THE COURT: Mr. Herbert, I have problems. I must have misunderstood your questioning. Has your mind changed on this subject during this jury selection process?
PROSPECTIVE JUROR HERBERT: No.
THE COURT: Have you had the same opinion throughout?

PROSPECTIVE JUROR HERBERT: As far as the Death Penalty is concerned?
THE COURT: Yes.
PROSPECTIVE JUROR HERBERT: That's right.
THE COURT: Well, I may not have misunderstood you and I want to be real clear. Are you telling the Court and these lawyers that no matter what the evidence is and no matter what the law is, you could never vote for a Death Penalty? You could consider it, think about it, but when you got through thinking about it, your mind's made up that you wouldn't vote for it in advance. Is that correct?
PROSPECTIVE JUROR HERBERT: Yes, sir.

on the assumption—that they would be partial to the defendant because of their shared race ... [or] on the assumption that blacks as a group are unqualified to serve as jurors....

*Id.*

■ In the present case, prima facie discrimination was established.[2] This case was remanded to the trial court for a hearing on defendant's allegations and the prosecutor's explanations. Although a record was not specifically made concerning inferences which could be made from the relevant circumstances, the third element of a prima facie case, the removal of all remaining blacks from the venire gives rise to a reasonable inference of racial discrimination. The prosecutor was then required to come forward with his explanations for excusing the black veniremen. The prosecutor did his best to reconstruct from the record, his memory, and from his own policies his reasoning in removing the particular jurors. The explanations were both neutral and logical based upon the record before him.[3] Such an explanation is not required to rise to the level of a challenge for cause. *Id.* at ——, 106 S.Ct. at 1723. We find this assignment to be without merit.

### III

■ As his fourth assignment of error (BIII), appellant contends that the jury did not comport with the Sixth Amendment, citing *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). He complains that the excusal of veniremen under *Witherspoon v. Illinois,* supra, denies a capital murder defendant a jury composed of a representative cross section of the community as required by such cases as *Taylor v. Louisiana,* supra. This contention is without merit. "Nothing in *Tay-*

lor, however, suggests that the right to a representative jury includes the right to be tried by jurors who have explicitly indicated an inability to follow the law and instructions of the trial judge." *Lockett v. Ohio,* 438 U.S. 586, 596–97, 98 S.Ct. 2954, 2960, 57 L.Ed.2d 973 (1978) (proper exclusion of jurors for cause under *Witherspoon* does not deprive a defendant of a jury chosen from a fair cross section of the community).

### IV

Title 38 O.S.1981, § 28(A) provides in part that "persons over seventy (70) years of age shall not be compelled to serve as jurors in this State." Appellant contends as his fifth assignment of error (BIV) that the statute violates the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution, and that the judge erred in failing to quash the jury panel. Appellant offers no authority in support of his Eighth Amendment claim, rather relying upon the Sixth and Fourteenth Amendment requirement of a jury composed of a representative cross section of the community, as declared in such cases as *Taylor v. Louisiana,* supra, and *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

■ In order to establish a prima facie violation of the fair cross section requirement, it must be shown that the group alleged to be excluded is a distinctive group in the community; that the representation of that group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and that the underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren,* 439 U.S. at 364, 99 S.Ct. at 668. In

2. The Court upheld the retroactive application of *Batson* in two cases decided January 13, 1987. Appellant's case is on direct appeal before us and falls within a class of cases to which the holding is retroactively applied.

3. Among the prime reasons offered by the prosecutor was: that one veniremen had a son the approximate age of appellant and may have

over identified with him; one had two individuals in her immediate family who had been convicted of felonies; and, one was in a profession and of a faith both generally considered to disfavor the death penalty. See Evidentiary Hearing Transcript November 13, 1986, pages 14, 16, and 20.

the case at bar, appellant failed to establish a prima facie case. He consented to the determination of his motion to quash on the basis of the bare stipulation by the State that some of those seventy years of age and older summoned for jury duty in appellant's case would claim the statutory exemption. Tr. of Motion Hearing, March 11, 1982, pp. 4–7.

■ We reject the suggestion that we should remand for an evidentiary hearing on this matter under 22 O.S.1981, Ch. 18, App.—Rules of the Court of Criminal Appeals, Rule 3.11. Trial counsel was aware of the proof requirements of a prima facie case under *Duren*, supra. Tr. of Motion Hearing, March 11, 1982, pp. 6–7. Since counsel made no attempt to offer the necessary proof, there is no reason for us to assume that it exists at this late stage.

We decline appellant's request upon this and other assignments of error that we remand under Rule 3.11. That rule is designed to permit the supplementation of the record on appeal, not the relitigation of factual questions determined in the trial court.

## V

As his sixth assignment of error (CI), appellant contends that the judge erred in overruling in part his motion for pretrial discovery. The judge overruled requests for the names of defendants prosecuted by the Oklahoma County District Attorney during an 18 month period for raping women fifty-five years of age and older; the names of suspects in the case at bar prior to the arrest of appellant; and information involving any unsolved rapes of women fifty-five years of age or older on the north side of Oklahoma City between January 1, 1980, and January 25, 1982. He relies upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ The suppression of evidence despite defense request is a denial of due process where the evidence is material to guilt or punishment, irrespective of the good or bad faith of the prosecutor. *Id.* at

87, 83 S.Ct. at 1196–97. The test of materiality is whether the requested evidence might have affected the outcome of the trial. *See, Hall v. State*, 650 P.2d 893, 897 (Okl.Cr.1982) (discussing the requirements of *Brady* in light of *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). We find no violation of *Brady*. The only requested information arguably material within the meaning of *Brady* had been disclosed to defense counsel. The defense had been advised by the State of the identity of the only other serious suspect in this case, an individual taken into custody prior to the time the defendant became a suspect. *See*, Tr. Motion Hearing, March 11, 1982, pp. 112–14.

## VI

■ As his seventh assignment of error (CII), appellant contends that incriminating evidence seized in the search of an apartment he shared with his girlfriend was the product of an illegal search. He acknowledges that his girlfriend consented to the search, but contends that her consent was ineffective as to the defendant. Aside from certain scholarly commentary, he cites only the dissenting opinion in *United States v. Stone*, 471 F.2d 170, 174 (7th Cir.1972) (Swygert, J., dissenting), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391 (1973).

This contention is not persuasive. The majority in *Stone* rejected the argument that the search of an accused's home shortly after his arrest pursuant to his wife's consent was invalid. The court relied upon the rule that where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and evidence thus discovered may be used against either. *Id.* at 173. *See also, United States v. Matlock*, 415 U.S. 164, 169–72, 94 S.Ct. 988, 992–93, 39 L.Ed.2d 242 (1974); *United States v. Mendonca*, 412 F.Supp. 613, 614 (W.D.Okl.1976), n. 1 and cases cited therein; *Nunley v. State*, 660 P.2d 1052 (Okl.Cr.1983), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 179; *Smith v. State*, 604 P.2d 139 (Okl.Cr.1979); and

*Burkham v. State,* 538 P.2d 1121 (Okl.Cr. 1975).

In the case at bar, defendant's girlfriend was the actual lessee of the apartment, and had at least equal right to the use and occupation of the premises. Her consent justified the search of the apartment.

### VII

As his eighth assignment of error (CIII), appellant contends that his incriminating statements to the police should have been suppressed. He contends that such statements were the product of the illegal search of the apartment he shared with his girlfriend. This argument assumes the invalidity of the search, an assumption rejected above.

Appellant further contends that his statement should have been suppressed because of unnecessary delay in his initial appearance before a magistrate in violation of 22 O.S.1981, § 182. Appellant was initially arrested on an unrelated charge on the 27th day of October, 1981, and was arraigned on November 3, 1981.

We find this contention is without merit. After his arrest on the unrelated charge, the search of his apartment disclosed evidence making him a prime suspect in five other crimes, not including the homicide charged in this case. During the period of delay, investigators and prosecutors sifted the evidence and prepared various charges for filing.

 It is the defendant's burden to show that he was prejudiced by delay in his initial appearance. *See, Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 850; *Stidham v. State,* 507 P.2d 1312 (Okl. Cr.1973); *Logan v. State,* 493 P.2d 842 (Okl.Cr.1972); *Dimsdle v. State,* 456 P.2d 621 (Okl.Cr.1969); *Brown v. State,* 384 P.2d 54 (Okl.Cr.1963); and *In re Dare,* 370 P.2d 846 (Okl.Cr.1962). The fact that statements were taken from him prior to his initial appearance does not establish the necessary prejudice. *See, Stidham,* supra; *Brown,* supra; and *In re Dare,* supra.

 Finally, appellant contends that the interrogating officers improperly failed to advise him that his statements could lead to the imposition of the death penalty. He concedes that he was fully advised of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant's argument is not well taken. This Court has held that interrogation officers are not obliged to apprise the accused of the particular charges to be filed against him; the choice of charges to be filed, if any, is for the prosecutor. *See, Hardin v. State,* 649 P.2d 799 (Okl.Cr.1982). The same is certainly true as to whether a bill of particulars will be filed against a defendant and the death penalty sought.

The eighth assignment of error is without merit.

### VIII

 As his ninth assignment of error (CIV), appellant asserts that the trial court erred in allowing evidence of aggravation to be heard in the first stage of the trial. He complains that the prosecution elicited from the assistant chief medical examiner that one experiencing the terror of being unable to breath would be under "some great mental anguish and apprehension." Tr. 728–29.

Any error in the admission of the evidence was harmless since the verdict in the first stage would have been the same, and since the evidence would have been admissible in the sentencing stage. *See, Chaney v. State,* 612 P.2d 269, 280 (Okl.Cr.1980), *rev'd in part,* 730 F.2d 1334 (10th Cir. 1984), *modified on other grounds,* 699 P.2d 159 (1985). The witness had testified that the victim died of traumatic asphyxia or suffocation; that either her airways were obstructed by some external object, or else pressure was exerted against her chest; that the victim did not die instantly, but rather would not have slipped into unconsciousness until after about three minutes, and that death would not have occurred for more than five and perhaps as many as six or seven minutes; that the

experience would be akin to drowning; and that fecal material deposited beneath the body could have resulted from the strain attendant upon the victim's struggle against her lack of breath. It is unreasonable to assume that the incremental effect of the challenged evidence adversely affected the appellant.

### IX

As his eleventh assignment of error (EI), appellant contends that the infliction of the death penalty for felony murder violates the Eighth and Fourteenth Amendments in the absence of a finding that the accused killed with premeditation or malice aforethought. He argues that the death penalty in such a case makes no measurable contribution to deterrence or retribution.

This assignment of error is not well taken. In *Hatch v. State*, 662 P.2d 1377, 1384, (Okl.Cr.1983), *cert. denied,* — U.S. —, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986), this Court reviewed the objectives and policy of the felony murder statutes. As noted therein, the felonies specified are crimes which by their very commission pose a threat to human life. Proscribing such conduct under the first degree felony murder statute performs the rational function of deterring the commission of felonies so inherently dangerous as to create foreseeable risks of death.

Statutes providing the death penalty for felony murder based on less than premeditation or express malice aforethought have been upheld against constitutional challenge. *See, e.g., Collier v. State*, 244 Ga. 553, 261 S.E.2d 364 (1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980); and, *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106 (1977), *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158. While one who does not himself kill, attempt to kill or intend that a killing take place or that lethal force be employed in the commission of a felony may not suffer the extreme sanction, *see, Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the evidence amply

supports the conclusion in the case at bar that the appellant alone caused the death of the victim by suffocation after brutally raping her.

### X

As his twelfth assignment of error (EII), appellant complains of the admission in the penalty phase of State's Exhibit No. 88. That is a document representing appellant's Illinois conviction for burglary of a dwelling. Tr. of Stage Two Proceedings, March 23, 1982, pp. 16–17, 18–19, and 22. Appellant argues that the exhibit did not reflect a crime involving the use or threat of violence to the person, and hence was not admissible in support of the aggravating circumstance that "[t]he defendant was previously convicted of a felony involving the use or threat of violence to the person." 21 O.S.1981, § 701.12(1). *See, Brewer v. State*, 650 P.2d 54, 62 (Okl.Cr.1982), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983).

We need not determine whether the exhibit was admissible in support of the aggravating circumstance stated, for it was clearly admissible in support of a second aggravating circumstance relied upon by the State, i.e., that there existed "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." 21 O.S.1981, § 701.12(7). The conviction was specifically alleged in the supplemental Bill of Particulars, O.R. 36, 37, ¶ (4), as support for the "continuing threat" circumstance. Although the crime was not one against the person, it was nevertheless probative, in combination with other factors, of appellant's propensity to commit criminal acts. *See, Duffy v. State*, 567 S.W.2d 197 (Tex. Cr.App.1978), *cert. denied*, 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666, (burglary of a habitation, forgery and three felony theft convictions held admissible to support an aggravating factor similar to Section 701.-12(7)).

### XI

As his thirteenth assignment of error (EIII), appellant complains that the

judge erred in receiving evidence of other crimes in the second stage, and that the evidence was insufficient to support the aggravating circumstance that there existed a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1981, § 701.12(7). He complains of the use of evidence of other unadjudicated rapes committed by appellant, concerning which criminal charges were then pending. His contention that the evidence was insufficient to support the aggravating circumstance is apparently based on the assumption that this evidence was inadmissible.

This contention is without merit:

[E]vidence of a defendant's criminal record, or prior unadjudicated acts of violent conduct is relevant to the determination of whether the defendant is likely to commit future acts of violence that would constitute a continuing threat to society.... [I]t is not necessary there be a final conviction for an unrelated criminal offense to be admissible at the sentencing stage.

*Johnson v. State,* 665 P.2d 815, 822, 823 (Okl.Cr.1982).

### XII

■ As his fourteenth assignment of error (EIV), the appellant contends that the jury instructions in the penalty phase violated state and federal constitutional provisions. He first asserts that the judge erred in failing to instruct that the jury had the right to sentence the defendant to life in prison even if they found that the aggravating circumstances were not outweighed by the mitigating circumstances. This argument is not well taken. The idea that the jury may decline to impose the death penalty even if aggravating circumstances are not outweighed by mitigating circumstances is subsumed within an instruction that if the jury finds one or more aggravating circumstances they may consider imposing the death penalty, i.e., that they could, but did not *have* to, impose death in that event.

The jury were not instructed that they *must* assess death if aggravating circumstances were found which were not outweighed by mitigating circumstances. Rather, they were instructed that they *"could* be authorized to *consider* imposing a sentence of death" (emphasis added) if an aggravating circumstance were found. Instruction No. 8, O.R. 141. They were also instructed that they did "not necessarily have to find the existence of either mitigating or aggravating circumstances in this case and if you so determine, the foreman should sign the verdict form for life without checking any of the boxes." Instruction No. 7, O.R. 140. *See also, Davis v. State,* 665 P.2d 1186, 1203–1204 (Okl.Cr. 1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, and *Burrows v. State,* 640 P.2d 533, 544 (Okl.Cr.1982), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983).

■ Appellant next asserts that the judge improperly instructed the jury not to "allow sympathy, sentiment or prejudice to affect you in reaching your decision." O.R. 143. He concedes that this Court has previously approved the giving of such instructions. *See, Davis,* 665 P.2d at 1203; *Parks v. State,* 651 P.2d 686, 693–694 (Okl. Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983); and *Brewer,* supra. However, he urges the reconsideration of our position in light of *People v. Easley,* 34 Cal.3d 858, 196 Cal. Rptr. 309, 671 P.2d 813 (1983).

In *Easley,* the majority were of the view that an instruction similar to that in the case at bar denigrated the defendant's right to present and have fairly considered mitigating circumstances tending to suggest that death is not the appropriate sentence. They reasoned that the instruction "in effect told the jury not to give any weight to the bulk of the evidence proffered by the defendant." *Easley,* 196 Cal. Rptr. at 323, 671 P.2d at 827.

However, the majority position was questioned by a concurring justice and a dissenting justice. In particular, Justice Mosk stated that, although the judgment must be reversed due to other error,

I cannot join the majority in its criticism of the instruction barring the jury from being swayed by mere sympathy.... In the current climate of public opinion, sympathy is more likely to be aroused for the victim and his family than for a defendant who has been found guilty of a brutal first degree murder. Thus cautioning a jury in the penalty phase of the trial not to be swayed by mere sympathy redounds to the benefit, not the detriment, of the defendant.

196 Cal.Rptr. at 327, 671 P.2d at 831. Such expression is similar to the reasoning of this Court in *Brewer*, 650 P.2d at 60–61:

In addition, 21 O.S.1981, § 701.13(C)(1) requires this Court, in reviewing the death sentence to determine whether it was imposed under the influence of passion, prejudice or *any other arbitrary factor*. The trial court's instruction against sympathy was designed to prevent 'arbitrary' influences such as sympathy for the victim or her family from affecting the jury's decision.

We find no reason to depart from our previous holding.

Moreover, the court in *Easley* rejected an argument that the adjudged defect was cured by other instructions in that case. An alleged narrative instruction did not advise the jury that it could consider as a mitigating factor any aspect of the defendant's character or background. The court stated that the alleged curative instruction itself could be said to have limited the jury's consideration of additional mitigating factors to those relating to the gravity of the crime, excluding those relating to the general character, family background or other aspects of the defendant.

In the course of submitting to the jury in the instant case some twenty-six possible mitigating factors, the trial judge instructed that "you are not limited in your consideration to these minimum mitigating circumstances. You must consider any additional mitigating factor you find from the evidence in this case. What are and what are not additional mitigating circumstances is for you the jury, to determine," O.R. 137,

and that "mitigating circumstances" are "circumstances that throughout one's lifetime are favorable factors which would call for the reduced sentence. What are and what are not mitigating circumstances is for you, the jury, to decide. You may consider anything you want as mitigation." O.R. 138. It is thus manifest that the judge's instructions gave the fullest possible latitude for the consideration of evidence in mitigation.

■ Appellant next asserts under this assignment of error that the judge improperly authorized the jury "to consider all the evidence received here in open court presented by the State and the defendant throughout the trial of the case before you." O.R. 143. He contends that this permitted the jury to consider nonstatutory aggravating circumstances in addition to evidence in aggravation not the subject of pretrial notice to the defendant under 21 O.S.1981, § 701.10.

This contention is without merit. In *Parks*, 651 P.2d at 694, this Court held that the first stage evidence may be received in the second stage. Such procedure was found to conform fully to the mandate of *Lockett v. Ohio*, supra, that the sentencer consider not only the defendant's record and character but any circumstances of the offense. Moreover, such procedure does not violate the statutory requirement of pretrial notice. The purpose of the pretrial notice requirement is to apprise the defendant of evidence relevant to sentencing which will be introduced for the first time in the sentencing hearing. That purpose is not served by requiring pretrial notice of evidence relevant both to guilt and punishment and thus admissible in both stages. *See, Berryhill v. State*, 249 Ga. 442, 291 S.E.2d 685 (1982), *cert. denied*, 459 U.S. 981, 103 S.Ct. 317, 74 L.Ed.2d 293.

■ Appellant finally contends that the judge erred in failing to instruct the jury that the State had the burden of proving beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating. He also contends that the 21 O.S. 1981, § 701.11 is unconstitutional for fail-

ure to require as much. This contention is without merit.

The "burden of proof" analysis is not strictly applicable to the weighing process:

It is well settled, as defendant points out, that our constitution protects an accused against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' *In re: Winship,* (1970) 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375. Our statute follows this proscription and provides that the State must prove beyond a reasonable doubt the existence of at least one of the enumerated aggravating circumstances. However, the determination of the weight to be accorded the aggravating and mitigating circumstances is not a 'fact' which must be proved beyond a reasonable doubt, but is a balancing process.

*Daniels v. State,* 453 N.E.2d 160, 171 (Ind. 1983).

The fourteenth assignment of error is without merit.

## XIII

■■■ As his fifteenth assignment of error (EV), appellant contends that the judge erred in refusing to instruct the jury that if a unanimous decision as to punishment could not be reached, the judge would impose a sentence of life imprisonment. He relies upon that part of 21 O.S.1981, § 701.11 which states that "[i]f the jury cannot within a reasonable time, agree as to punishment, the judge shall dismiss the jury and impose a sentence of imprisonment for life." However, such a statutory injunction is "an instruction for the trial court, not for the jury." *Coulter v. State,* 438 So.2d 336, 346 (Ala.Cr.App.1982). It would amount to an invitation to the jury to avoid the difficult duty of passing sentence upon the life of the accused. *See, Burrows,* supra. We find no error. *See, Davis,* supra; *Parks,* supra; and, *State v. Johnson,* 298 N.C. 355, 259 S.E.2d 752 (1979). *But see, State v. Williams,* 392 So.2d 619 (La.1980).

## XIV

■■■ As his sixteenth assignment of error (EVI), appellant complains that the judge erred in the second stage by failing to take the case from the jury and imposing a sentence of life imprisonment. He relies upon 21 O.S.1981, § 701.11, supra. We have not had occasion to consider what constitutes a "reasonable time" within which the jury must decide punishment under Section 701.11. However, the courts of North Carolina have construed a similar provision, N.C.Gen.Stat. § 15A–2000(b), as committing the determination of what constitutes a "reasonable time" to the discretion of the trial judge.

In *State v. Johnson,* 298 N.C. 355, 259 S.E.2d 752 (1979), the court determined that three hours and thirty-nine minutes was not an unreasonable length of time for deliberations, and that the judge did not abuse his discretion in denying a request that he dismiss the jury after two hours and thirty-nine minutes of deliberations. In *State v. Kirkley,* 308 N.C. 196, 302 S.E.2d 144 (1983), the appellate court determined that seven and one half hours did not constitute an unreasonable time. The court reasoned that the trial judge was in the best position to determine how much time is reasonable under the facts of a specific case, including the number of aggravating and mitigating circumstances confronting the jury.

In the case at bar, second stage deliberations commenced at 8:59 p.m. on the evening of March 23, 1982. At 11:36 p.m., the jury returned to the courtroom and requested the report of the medical examiner as to the condition of the victim's face and chest. The request was denied, since the report had not been received into evidence. However, the judge took the opportunity to advise the jury that they could recess for the night and return the next day to continue deliberations. The foreman expressed the view that a verdict could be reached within possibly another hour. At 12:15 a.m., the judge denied the defense request that he dismiss the jury and enter a sen-

tence of life in prison under the statute. The jury returned its verdict at 12:35 a.m.

We find no abuse of discretion. The jury deliberated at most three hours and thirty-five minutes. They were faced with the task of considering twenty-six mitigating and three aggravating circumstances. This assignment of error is without merit.

### XV

■ As his seventeenth assignment of error (EVII), appellant contends that the Oklahoma death penalty statutes are unconstitutional due to the failure of the State to demonstrate that the death penalty fulfills a compelling state interest which cannot be gratified by less drastic means. He relies upon *Commonwealth v. O'Neal,* 369 Mass. 242, 339 N.E.2d 676 (1975). This argument was firmly rejected by this Court in *Burrows,* supra, and *Glidewell v. State,* 663 P.2d 738, 743 (Okl.Cr.1983). *See also, Davis,* supra. The *O'Neal* approach predates the decision of the United States Supreme Court in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and the rationale employed in *O'Neal* was ultimately rejected in *Gregg.*

### XVI

Appellant assigns as his first assignment of error (AI) the denial of his pretrial request for funds to explore and prove a defense using expert witnesses, and further claims the death penalty statutes are unconstitutional in their failure to provide an indigent defendant funds to explore and present mitigating evidence, or to provide for investigation by the State into mitigating factors.

More particularly, appellant asserts that he was entitled to the assistance of a forensic chemist to counter the State's use of such witnesses. He also insists that the State should have provided funds for the employment of a psychiatrist to determine whether appellant was competent at the time of the crime. Appellant's other main contention is that the right to present evidence in mitigation at the sentencing hearing in a capital case required that an indigent defendant be provided with State assistance in procuring such evidence. In this respect, defense counsel sought funds prior to trial to journey to Chicago, Illinois, to interview possible witnesses for use at the sentencing proceeding, and also sought money for the employment of a psychiatrist to explore the possibility of mitigating evidence.

■ Due process of law may require that the State provide an indigent defendant access to an expert witness. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake,* the United States Supreme Court held that the defendant suffered deprivation of constitutional safeguards when he was denied the assistance of a psychiatrist to explore and present his only defense of insanity. In that case, evidence of the defendant's mental instability was especially apparent and he had demonstrated that his sanity at the time of the offense was to be a significant factor at trial. The risk of inaccurate resolution of sanity issues being extremely high, and yet the consequences of error great, the Court held the expense to the State was justifiable.

■ In the case at bar, the request for a psychiatrist was based on little more than the assertion that a young man who would sexually assault and slay an elderly woman is not sane. However, this does not amount to a showing that his sanity at the time of the offense would be a significant factor at trial. Without more, it cannot be said that appellant was denied due process in not being provided access to a psychiatrist.

Indeed, appellant's defense at trial was that he did not commit the offenses. The theory he attempted to prove was that his nephew committed the crimes. Appellant did not plead insanity and his evidence at trial did not suggest this defense. The State did not make psychiatric evidence an issue at trial. *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985) *cert. denied,* — U.S. —, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).

Therefore, we find no constitutional deprivation in this regard.

■ Appellant also requested funds to hire a forensic chemist to contest the State's scientific evidence. That evidence included blood type and presence of antigen in the blood and semen found on the victim, her clothing and bedding. Tests for the presence of sperm were also conducted and admitted. Comparison was made between hairs and fibers found at the crime scene with those removed from appellant and his clothing, and a chemist testified concerning her conclusions.

The techniques used and manner of investigation were discussed on direct and on cross-examination. The test results were available for discovery prior to trial. The experts called were forthright concerning their findings and the limitations inherent in the tests and investigation. *See, Moore v. Zant,* 722 F.2d 640 (11th Cir.1983) wherein the court held that in a similar case where similar tests were utilized, and where as here the experts were not alleged nor shown to be biased, the constitution was not violated by denying a criminal defendant his own experts.

We reach the same conclusion in the instant case. Appellant did not demonstrate to the trial court that the tests or results were seriously in question. Moreover, we do not consider the risk of inaccurate resolutions from the scientific tests involved such that due process of law is threatened if a defendant is denied access to independent experts. The Court's opinion in *Ake* weighed this factor heavily in evaluating whether constitutional safeguards were endangered. *See additionally, Plunkett v. State,* 719 P.2d 834 (Okl.Cr. 1986).

■ Defense counsel sought public funds to permit counsel to journey to the State of Illinois to interview possible witnesses. Counsel failed to disclose the details of the hoped for contacts, and failed to indicate that personal contact by counsel was the only way to obtain the information desired instead of alternate methods such as the use of mails, telephone or subpoena,

*see,* 22 O.S.1981, §§ 721–724. The value of the investigation to the trial as well as the lack of alternative devices to fulfill the same functions are not discernible. *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). It is significant to note that the trial court subsequently provided state funds for the transportation of members of appellant's family from Chicago to Oklahoma City to appear as witnesses in the second stage of trial. It does not appear that counsel established the need for the investigative funds.

■ Appellant asserts also in this assignment that our death penalty statutes are unconstitutional relying on cases which have held death penalty statutes unconstitutional which prevent the sentencer in all capital cases from considering mitigating factors in assessing punishment. *See, Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). We find this assignment to be without merit. Our death penalty statutes require the sentencer to weigh mitigating against aggravating circumstances. 21 O.S.1981, § 701.11. Also, they have previously been upheld as not inflicting cruel or unusual punishment. *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983). Appellant's contention that they must be unconstitutional because they do not by the terms of the statutes provide authorization for funds to allow indigent defendants to pursue and present mitigating evidence is unsupported.

■ Appellant compares his case to certain cases his counsel is familiar with in Oklahoma County District Court to support his contention (CVIII) that Oklahoma's death penalty statutes have resulted in arbitrary and capricious sentencing and has been applied in a discriminatory manner in violation of the U.S. Constitution. He argues that in equally heinous or worse cases, some individuals have received life sentences. However, these cases are not in evidence before us. Nor has appellant

offered a comparison of mitigating circumstances present in each of these cases. His claim of discrimination is based solely on the fact defense counsel has not heard of imposition of the death penalty against a black person for killing another black person. We do not consider appellant's final claim meritorious.

In all capital cases, this Court is charged with making the determinations of whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and, whether the evidence supports the jury's finding of certain statutory aggravating circumstances. 21 O.S.Supp.1985, § 701.13.

Two statutory aggravating circumstances were found to exist by the jury. The first was that the defendant had previously been convicted of a felony involving the use or threat of violence to the person. And, the second was that there existed a probability the defendant would commit criminal acts of violence that would constitute a continuing threat to society. We have found that each finding is supported by the evidence. And from our review of the record, we cannot say that the jury was influenced by passion, prejudice, or any other arbitrary factor. The evidence of guilt and of the aggravating circumstances is substantial.

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., not participating.