Robyn LeRoy PARKS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-79-3.

Court of Criminal Appeals of Oklahoma.

Aug. 26, 1982.

Rehearing Denied Sept. 28, 1982.

Robert A. Ravitz, Asst. Public Defender, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., State of Oklahoma, Susan Talbot, Asst. Atty. Gen., Chief, Appellate Criminal Division, Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Robyn LeRoy Parks was found guilty of Murder in the First Degree pursuant to Laws 1976, ch. 1, § 1, now 21 O.S.1981, § 701.7 in the District Court of Oklahoma County, Case No. CRF–77–3159. Subsequent to a hearing on aggravating and mitigating circumstances, the jury voted to impose the death penalty.

At approximately 4:30 a. m. on August 17, 1977, the victim, Abdullah Ibrahim was found shot to death on the floor of the Gulf Service Station where he was employed. An unused charge slip bearing various notations on both the front and back, which was apparently used as a scratch pad to compute the customers' purchases and figure tax, was found at the scene of the homicide by an investigating police officer. This same charge slip also had a license tag number written across the front of it, XZ–5710. It was subsequently determined that the owner of the vehicle bearing that license tag number was Robyn LeRoy Parks.

On August 29 and 30, 1977, James Clegg, an informant, allowed representatives of the State to tape two phone conversations that Clegg had with the appellant who was then in San Pedro, California. During the course of the August 29th telephone conversation, Parks told Clegg that he shot Abdullah Ibrahim because Ibrahim had written down his tag number and Parks was afraid Ibrahim would call the police when he realized Parks' credit card was hot. During the August 30th phone conversation, Parks revealed the location of the gun that he used to shoot the victim. At that location, a .45 calibre pistol in a holster and a box of .45 calibre ammunition was found by Clegg who was accompanied by a police detective.

Robyn Parks testified in his own defense that the answers he gave on the two tapes were not true, that he had made the incriminating statements in order to protect his family from further harassment. He claimed that on an earlier day he had obtained gas at the station and because he did not have the money with which to pay, the attendant wrote down his license tag number. He returned the same night to pay for the gas. He further testified that on the night of the murder, he had stayed at the home of Elaine Sheets.

During the second stage of the trial, the State offered three aggravating circumstances to justify imposition of the death penalty. In mitigation, the State offered the testimony of Robyn Parks' father. The jury found one aggravating circumstance, that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution.

Error is first alleged in the trial judge's refusal to allow an instruction on the offense of Murder in the Second Degree pursuant to Laws 1976, ch. 1, § 2, now 21 O.S.1981, § 701.8(2). The desired instruction would have allowed the jury to determine, based on the evidence, that the appellant murdered the victim while the appellant was committing the felony of using a fraudulent credit card in violation of Laws 1981, ch. 86, § 4, now 21 O.S.1981, § 1550.-22.

■ Both parties agree that a defendant is entitled to have an instruction on a lesser included offense where the evidence warrants it. *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); 22 O.S.1971, § 916. The trial court determined as a matter of law that the evidence was insufficient in the present case to allow the jury to find that the appellant was using a fraudulent credit card, thus there could be no justification for a finding of second degree murder.

■ The sole evidence offered to the jury to support a finding that the appellant was using a fraudulent credit card was the appellant's own statement made during the tape recorded conversation with the informant, Clegg. Aside from that statement,

no other evidence was ever introduced to show credit card use, such as a credit card receipt for gasoline, or any evidence of a credit card or of missing gasoline.

We agree that the trial judge was correct in not allowing an instruction on second degree murder. Judge Cannon stated:

As a matter of fact, the defendant's own testimony was that he didn't even own a credit card. But even in the State's case there was no evidence of a credit card, except his statements and his statement alone does not prove the corpus delecti of the crime. There is no corpus delecti of any other felony having been committed .... There is no evidence of it and, consequently, it's Murder One or nothing. (Tr. 543)

See also, *DeLaune v. State,* 569 P.2d 463 (Okl.Cr.App.1977) quoting *Hall v. State,* 538 P.2d 1113, 117 (Okl.Cr.App.1975):

... The general rule is that in every criminal prosecution the burden rests on the State to prove the corpus delecti beyond a reasonable doubt. This must be proven by evidence other than a confession, the confession being admissible merely for the purpose of connecting the accused with the offense charged.

Because there was no evidence to support a lower degree of the crime charged or an included offense, it was not only unnecessary to instruct on second degree murder, but the court had no authority to ask the jury to consider the issue. *Irvin v. State,* 617 P.2d 588 (Okl.Cr.App.1980); *Rogers v. State,* 583 P.2d 1104 (Okl.Cr.App.1978).

■ In a supplemental brief, the appellant alleges that his conviction for first degree murder cannot be sustained for the reasons that his tape recorded statements were not corroborated by independent proof of the corpus delecti. We agree, as we have already stated, that the State must prove the corpus delecti beyond a reasonable doubt by evidence other than a confession. *DeLaune v. State,* supra. The appellant acknowledges that evidence introduced by the State established that a homicide was committed, but argues there was insufficient proof of the corpus delecti to corroborate his confession since no evidence was presented connecting him with the actual commission of the offense independent of his statements.

■ This contention misconstrues the definition of corpus delecti and the extent of the proof the State introduced to connect the appellant to the crime. The "corpus delecti" means the actual commission of a particular crime by someone. *Bond v. State,* 90 Okl.Cr.App. 110, 210 P.2d 784 (1949). The corpus delecti may be established without showing that the offense charged was committed by the accused. *Webb v. State,* 550 P.2d 1360 (1976).

■ In the present case, the testimony of the police and the medical examiner established that a homicide was committed, and the State therefore clearly established the corpus delecti by evidence independent of appellant's statements. Further evidence introduced by the State in the form of the credit card slip bearing the appellant's license tag number was sufficient to link the appellant to the corpus delecti of the crime. We therefore conclude that the evidence is sufficient to sustain the conviction and this proposition is without merit.

■ Secondly, the appellant contends that the trial court committed fundamental error by limiting the circumstantial evidence instruction to cover only the issue of malice aforethought. He argues that because there was a complete lack of any direct evidence to show he was connected to the crime, a general circumstantial evidence instruction should have been given. However, the tape-recorded conversations introduced at trial, in which the appellant admitted that he committed the crime, provided direct evidence linking the appellant to the crime.

■ Also, no objection was made at the time the instructions were given, nor was an alternative instruction offered. When the evidence is both direct and circumstantial, it is not error to fail to give a circumstantial evidence instruction when none is requested. *Grimmett v. State,* 572 P.2d 272

(Okl.Cr.App.1977). Therefore, the trial court did not commit error by failing to provide a general circumstantial evidence instruction.

The third and fourth propositions of error contend that the trial court violated the appellant's Sixth and Fourteenth Amendment rights by excusing six jurors for cause because of their opposition to the death penalty. It is first alleged that the trial court failed to fully inquire of these six jurors whether they could consider the death penalty as required by the juror's oath. The appellant argues that this failure to inquire violated the holding of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). There, the United States Supreme Court recognized that the State might not exclude jurors because of their views on the death penalty unless ". . . they could never vote to impose the death penalty or . . . they would refuse even to consider its imposition in the case before them." 391 U.S. 510, at 512, 88 S.Ct. 1770 at 1772.

▪ In the present case, the trial judge asked each juror the following question.

> In a case where the law and evidence warrant, in a proper case, could you without doing violence to your conscience, agree to a verdict imposing the death penalty?

If a juror responded in the negative, the judge would then ask:

> If you found beyond a reasonable doubt that the defendant was guilty of murder in the first degree and if under the evidence, facts and circumstances of the case, the law would permit you to consider a sentence of death, are your reservations about the death penalty such, that regardless of the law, the facts and circumstances of the case, you would not inflict the death penalty.

If a juror answered yes to this, then the trial judge excused that juror for cause. It is our determination that this line of questioning and the resulting dismissal for cause did not violate *Witherspoon.* The trial court's questioning resulted in the determination that the juror, regardless of the law,

facts or circumstances would never inflict the death penalty and this is exactly what the Supreme Court in *Witherspoon* held to be the correct standard to allow dismissal of a juror for cause.

▪ The appellant also claims that the dismissal of these six jurors denied him a jury which represented a cross section of the community.

▪ He cites *Witherspoon,* supra, to support the contention that it is the proper duty of the jury to express community attitudes about punishment. The appellant is correct that *Witherspoon,* supra, does stand for the proposition that a sentence of death could not be carried out where the jury that recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. However, the Supreme Court in that case determined that the appellant's right to representation by a fair cross-section of the community stopped there and did not extend so far as to require the inclusion of persons on the jury who could never vote to impose the death penalty or would refuse even to consider its imposition. Therefore, the appellant's argument is without merit.

The appellant claims in his fifth proposition of error that during voir dire, the trial court while trying to explain the difference between a civil case and a criminal case, defined reasonable doubt. The judge stated:

> No one's going to tell you what reasonable doubt is. Its got to be beyond a reasonable doubt. There's a higher degree of proof required in a criminal case before you could find someone guilty than in a civil case. Go back to those scales, ladies and gentlemen. If you have those scales that are even, and in a civil case you tip them in favor of the plaintiff by preponderance of the evidence. But in a criminal case, there has to be a greater one. Exactly where, is up to you, but you have to be beyond a reasonable doubt before you can find a defendant

guilty. That's the law of all fifty states.... That's the law of Oklahoma and the Federal government.

■ This Court has repeatedly held that an attempt to define "reasonable doubt" to a jury by the trial judge is reversible error. *Jones v. State,* 554 P.2d 830 (Okl.Cr.App. 1976). However, nowhere in the remark of which the appellant complains did the trial court actually give a definition of "reasonable doubt." Therefore, no error occurred. See, *Miller v. State,* 567 P.2d 105 (Okl.Cr. App.1977).

■ Next, the appellant asserts two errors occurred with respect to the taped telephone conversations admitted into evidence. He argues that the Oklahoma constitutional provision, Article II, § 30, against unreasonable searches and seizures prevents the admission of taped conversations into evidence even though one party consented to the taping. He further alleges, that it was error for the jury to have been provided also with typewritten copies of the tape recorded conversation because this resulted in a violation of the "best evidence" rule.

We cannot agree with either contention. One who voluntarily enters into a conversation with another takes a risk that that person may record the conversation. Once one party consents to record a conversation, the conversation is divested of its private character. *Pearson v. State,* 556 P.2d 1025 (Okl.Cr.App.1976). We therefore conclude that because Mr. Clegg consented to the taping of the conversations, no violation of the appellant's right to privacy as contemplated by Article II, § 30 of the Oklahoma Constitution occurred.

In addition, the jury did listen to the actual tapes made of the conversations, therefore the "best evidence" rule, 12 O.S. 1981, § 3001, was not violated. The appellant has cited no relevant authority for his assertion that it was error for the jury to also receive typed copies of the conversations on the tapes, for this reason, the alleged error will not be considered. *Dick v. State,* 596 P.2d 1265 (Okl.Cr.App.1979).

When the appellant was seventeen years old, he was convicted of Robbery by Force or Fear. In proposition of error number nine the argument is made that the State should not have been allowed to use this prior conviction to impeach the appellant because the appellant had not been certified to stand trial as an adult before he was convicted.

■ A determination that the prior robbery conviction was unconstitutionally obtained has never been made, nor is this the proper place for the appellant to collaterally attack that conviction. See 22 O.S. 1981, §§ 1080 et seq. Therefore, no error occurred when the State used the appellant's prior conviction for purposes of impeachment pursuant to 12 O.S.1981, § 2609.

Following the jury's determination that the appellant was guilty of Murder in the First Degree, a separate sentencing proceeding was held in accordance with 21 O.S.1981, § 701.10. The remaining part of this opinion concerns error that allegedly occurred during this second portion of the trial.

■ It is first argued that error occurred when the court allowed William David Boren and William Boren to testify about the specific facts concerning the defendant's conviction for Robbery by Force and Fear and to identify a picture of William David Boren as being the picture of his face after he was beaten by Parks during the robbery. The appellant asserts that this testimony was outside the scope of rebuttal and introduced solely to effect the passions and prejudices of the jury. However, no objection was made at any time by defense counsel to the presentation of this evidence. Absent fundamental error, this Court will not consider allegations of error not objected to at trial. *Gaines v. State,* 568 P.2d 1290 (Okl.Cr.App.1977).

■ Next, the appellant asserts that the admission of a photograph of the victim at the scene of the crime was error because it may have been the cause of the jury's returning the death penalty. This picture

was admitted during the second stage of the proceeding in order to prove the aggravating circumstance that the offense was especially heinous, atrocious and· cruel. This Court has repeatedly said that when the probative value of a picture is outweighed by its prejudicial impact on the jury it will not be permitted into evidence. *Oxendine v. State,* 335 P.2d 940 (Okl.Cr. App.1958). Further, the weighing of these factors is left to the sound discretion of the trial court and absent an abuse of discretion it will not be disturbed on appeal. *Boling v. State,* 341 P.2d 668 (Okl.Cr.App.1959). The photograph was relevant to the issue for which it was introduced. In view of the fact that the jury, after viewing the photo, failed to find the aggravating circumstance that the crime was especially heinous, atrocious and cruel, no abuse of discretion is apparent.

Third, the appellant alleges that the prosecutor made improper remarks during the closing argument that denied the appellant a fair trial. The appellant complains that the prosecutor interjected his personal opinion when he stated: "So looking at it from both sides, I can't find a single, solitary mitigating circumstance that would offset any of the aggravating circumstances." Further, it is argued the prosecutor committed error by stating that in assessing the death penalty each juror was not personally putting Robyn Parks to death, by commenting on how the death penalty is effectuated in Oklahoma County, by telling the jury to leave sympathy, sentiment and prejudice out of their deliberation and by commenting on the deterrent value ·of the death penalty.

██ We have repeatedly held that when an objectionable statement is made by a prosecuting attorney, defense counsel must object and request that the jury be admonished to disregard the statement. *Tahdooahnippah v. State,* 610 P.2d 808 (Okl. Cr.App.1980). When this is not done the appellant is deemed to have waived any objection, unless the remarks are fundamentally prejudicial. *Bruner v. State,* 612 P.2d 1375 (Okl.Cr.App.1980). Because de-

fense counsel did not object to these remarks at the time the prosecutor made them, and we find no fundamental prejudice occurred as a result, this proposition of error is without merit.

██ Error is also alleged in various instructions given by the trial judge. It is argued that the statement in the last instruction, "Your verdict must be unanimous . . . Proper forms of verdict will be given you which you shall use in expressing your decision" was erroneous because it required the jury to come back with a verdict and did not explain to them that if they could not agree reasonably to a verdict they must come back with a verdict of life imprisonment. However, it is the appellant's brief and not the trial judge's instructions that incorrectly states the law. In Oklahoma, the jury in a criminal case is required to reach a unanimous verdict. See, 22 O.S. 1981, § 921. As was properly stated in Instruction No. 7, if the jury does not find unanimously beyond a reasonable doubt one or more of the statutory circumstances existed, they would not be authorized to consider the penalty of death, and the sentence would automatically be imprisonment for life. The authority for this statement is found in 21 O.S.1981, § 701.11: "If the jury cannot, within a reasonable time, agree as to punishment, the judge shall dismiss the jury and impose a sentence of imprisonment for life." Therefore no error occurred in this instruction.

The appellant also argues that the jury instructions rendered the Oklahoma Death Penalty Statute unconstitutional as applied for five reasons.

██ In Part A of this five part argument, the appellant objects to the statement found in Instruction No. 9, "You must avoid any influence or sympathy, sentiment, passion, prejudice or other arbitrary factor when imposing sentence." He argues that this statement nullified the court's earlier instruction to the jury concerning mitigation. We do not agree. The statement complained of is taken out of context. It is found in the final instruction to the jury which was a general instruction on the duty

of jurors. The particular paragraph in which the statement is found explained to the jurors that each must determine the importance and weight of the evidence himself and discharge his duty as a juror "impartially, conscientiously and faithfully . . . and return such verdict as the evidence warrants when measured by these Instructions."

Instruction No. 6, on the other hand, clearly explained to the jurors that they were not limited in their consideration to the minimum mitigating circumstances set out by the court, but could consider any other mitigating circumstances that they found existed from the evidence. We therefore see no conflict between the two instructions.

■■■ Part B of this proposition of error appears to argue that the Oklahoma statute, 21 O.S.1981, § 701.11, interpreted by this Court in *Irvin v. State,* 617 P.2d 588 (Okl.Cr.App.1980), creates an unconstitutional mandatory imposition of the death penalty once aggravating circumstances outweigh mitigating circumstances. It is not surprising that the appellant's argument is unsupported by relevant authority. It is true that the Supreme Court struck down North Carolina's death penalty statute [1] because it made the imposition of the death penalty mandatory once first-degree murder was found. On the contrary, the Oklahoma statute provides objective standards to guide the jury in its sentencing decision; the jury is not required to recommend death even if it finds that one or more aggravating circumstances have been established beyond a reasonable doubt. Similar statutory schemes have been upheld by the Supreme Court in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

It is argued in Part C that the trial judge did not adequately explain to the jury the purposes for which they were to use mitigating circumstances or how the mitigating circumstances should be weighed in relation to the aggravating circumstances. There is no indication in the record that the appellant objected to the instructions he now complains of, or offered any alternative instructions. Where such is the case, this Court deems the error waived unless the accused was deprived of a substantial right due to the failure to instruct upon a material or fundamental question of law. *Luckey v. State,* 529 P.2d 994 (Okl.Cr.App.1974). We have reviewed the instructions on mitigating and aggravating circumstances and find they were sufficient to inform the jury of their duty in deciding whether to impose a sentence of death or life imprisonment.

■■■ Part D alleges that 21 O.S.1981, § 701.11 unconstitutionally shifts the burden of proof to the appellant to prove sufficient mitigating circumstances to outweigh the aggravating circumstances. We find that the statutory language requiring the defendant to come forward with evidence of mitigating circumstances does not impermissibly shift the burden of proof to the defendant in contravention of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In the guilt stage of the trial, the jury was instructed that the burden was on the State to prove beyond a reasonable doubt every element of first degree murder. The judge also instructed in the second stage of the trial that the State was required to prove beyond a reasonable doubt at least one aggravating circumstance. Therefore, we find the appellant's contention to be without foundation.

■■■ Lastly, the appellant contends that error resulted in the giving of part of Instruction No. 9 which advised the jury that they were authorized to consider all evidence presented throughout the trial in determining what sentence the defendant should receive. The argument is wholly without merit in view of the U. S. Supreme Court's clear mandate in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which authorized the sentencer, in this case the jury, to consider not only the defendant's record and character, but any circumstances of the offense.

1. *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

■ In Proposition of Error Number Fifteen, the appellant argues that insufficient evidence existed to allow the jury to find the aggravating circumstance that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. This argument lacks merit because of our previous decision in *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.App.1980), remanded for resentencing —— U.S. ——, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), wherein we stated that: "It is important to realize that the focus of this aggravating circumstance is on the state of mind of the murderer.... It is the murderer who must have the purpose of 'avoiding or preventing a lawful arrest or prosecution.'" *Eddings v. State, supra,* at 1169. The evidence presented by the State in the taped telephone conversation between the appellant Clegg and Parks clearly established Parks' state of mind.[2] Therefore the jury had ample evidence on which to find the aggravating circumstance and no error occurred.

■ Lastly, the appellant contends that the Oklahoma death penalty is unconstitutional because the State has failed to show that the death penalty fulfills a compelling state interest which cannot be gratified by less drastic means and because the death penalty constitutes cruel and unusual punishment. Both of these issues have been addressed and rejected by the U. S. Supreme Court in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). There the court upheld the Georgia death penalty statute and in addition to finding that the death penalty did not constitute cruel and unusual punishment in violation of the Eighth Amendment, also stated that:

> We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved.

In accord with the Supreme Court decisions in *Gregg v. Georgia, supra,* and *Proffitt v. Florida, supra,* we find that the Oklahoma death penalty statute is constitutional.

■ In addition to ruling on the assignments of error that are raised, 21 O.S.1981, § 701.13, ¶ C, requires this Court to make three determinations. We have examined

2. The transcript of the telephone conversation reveals the following colloquy:

    * * * * * *

James: Youdon't [sic] know nuthin.
Robin: Agh—I don't know.
James: You don't [sic] know nuthin.
Robin: I reckon.
James: Hey man, and I just found out today you didn't even get no money.
Robin: I wasn't going there to get no money.
James: You wasn't_____ .
Robin: I went there with a credit card I guess, credit card, you see what happened, he come up, I give him the credit card, he come out the booth to come back and look at my tag number.
James: ugh-huh
Robin: So I know then that if he get the tag number, as soon as I leave he gonna call the law.
James: Hugh.
Robin: Alright? [sic]
James: Ugh-hugh.
Robin: OK, he gonna call the law, I got them guns, the dynamite and everything in my trunk, right?
James: Yea, I didn't know that.
Robin: I ain't going to get too far before they get on me (James; ugh-huh,), so I said the way to do that if he don't be around then ain't nuthin he can tell them noway.

    * * * * * *

Robin: No, but see, but that is what people fail to realize. See if he had of told on me, see I would have went anyway. See what I'm saying? ·
James: Yea.
Robin: And, I just looked at it I might as well, If I'm go, let me go for being a dumb son of a gun, you know a little funky gas credit card.

    * * * * * *

James: ... Hey man, but see, I have just been thinking man, you got to be cool man, because I, you know, shit, the thing is that that's murder.
Robin: Yea, but, well, that is what I'm trying to get you to see, ain't no witnesses, so what?
James: Yea.
Robin: See, I'm what I'm trying to get you to see, if they, if I would have got caught red today they can't find nobody that they can get up there and say yea, they seen me do this or seen me do that or this happen or that happen because there wasn't nobody there but me and him. See, and, I ain't got no guns, I ain't got nuthin.

the record in this case and have given careful consideration to the arguments of counsel and we hold:

1. That the sentence of death was not imposed "under the influence of passion, prejudice, or any other arbitrary factor." Section 701.13, ¶ D.

2. That the evidence does support the jury's finding of the statutory aggravating circumstance, § 701.12(5), the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution.

3. That the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.[3]

The current death penalty statutes comply with the guidelines set out in *Gregg.* We have considered and overruled each assignment of error by the petitioner and have completed the statutorily mandated sentence review. We have searched the record for any fundamental error that might have prejudiced the petitioner and have found none. We find no other reason to disturb or modify petitioner's death sentence.

The judgment of guilt and the sentence of death are AFFIRMED.

BUSSEY and CORNISH, JJ., concur.

---

**3.** We have compared this case to all of the death penalty cases decided after the current death penalty statute became effective July 24, 1976. *Burrows v. State,* 640 P.2d 533 (Okl.Cr. App.1982); *Giddens v. State,* unpublished opinion, Nov. 17, 1981; *Franks v. State,* 636 P.2d 361 (Okl.Cr.App.1981); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.App.1980); *Hays v. State,* 617 P.2d 223 (Okl.Cr.App.1980); *Chaney v. State,* 612 P.2d 269 (Okl.Cr.App.1980); *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.App.1980).