MURPHY, Circuit Judge,
dissenting.
This case presents an important question: Do the Supreme Court’s decisions in Simmons and Shafer apply in a state with a weighing-based death penalty scheme when the jury has determined that the prosecution failed to prove beyond a reasonable doubt that the defendant is a continuing threat to society? The answer to that question is “no.” The majority erroneously concludes, however, that Mollett’s jury was presented with the same due process problem at issue in Simmons. Majority Op. at 909-20. The majority’s opinion is based on a faulty application of Simmons and Shafer and a concomitant failure to consider key differences between the nonweighing-based death penalty scheme in South Carolina and the weighing-based death penalty scheme in Oklahoma.
The majority sets out at great length the Supreme Court’s holdings in Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) and Shafer v. South Carolina, 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001). Majority Op. 909-16. I do not quibble with the rule of law the majority draws from these cases: “Reaffirming its holding in Simmons, the Court held [in Shafer ] ‘that whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina’s new scheme, due process requires that the jury be informed that a life sentence carries no possibility of parole.’ ” Majority Op. at 913 (quoting Shafer, 532 U.S. at 51, 121 S.Ct. 1263 (emphasis added in Majority Op.)). The majority fails to acknowledge, however, that the Supreme Court’s ruling was specifically in response to South Carolina’s nonweighing-based death penalty scheme.[1] An understanding of the way in which the South Carolina death penalty scheme operates is essential to understanding the exact parameters of the rule announced in Simmons.
South Carolina is what is commonly referred to as a “nonweighing state.” See S.C.Code Ann. § 16-3-20; Jones v. State, 332 S.C. 329, 504 S.E.2d 822, 824 n. 1 (1998); see also Smith v. Moore, 137 F.3d 808, 815 (4th Cir.1998). See generally Stringer v. Black, 503 U.S. 222, 229-30, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) (describing, by reference to Mississippi’s and Georgia’s death penalty schemes, differences between weighing and nonweigh-ing states). In South Carolina, the jury must find the existence of at least one statutory aggravating circumstance before a defendant is eligible for a sentence of death. S.C.Code Ann. § 16-3-20(B). If the jury finds the existence of a statutory aggravating circumstance, it must move on to determine whether to impose the death sentence. Id. In so doing, the jury is not limited to a “weighing” of the aggravating circumstances proved by the state against any mitigating circumstances proved by the defendant. Id. Instead, the jury’s prerogatives are much broader: it is entitled to consider “additional evidence in extenuation, mitigation, or aggravation of the punishment.” Id. A South Carolina jury is *924 not inhibited by a requirement that it limit its deliberations to weighing of statutory aggravators and mitigating circumstances, as is the jury in a weighing state like Oklahoma.
Under South Carolina’s death penalty scheme, future dangerousness is not a statutory aggravating circumstance to be considered in the death eligibility step of jury deliberations. Kelly v. South Carolina, 534 U.S. 246, 259 n. *, 122 S.Ct. 726 (2002) (Rehnquist, C.J., dissenting). Nevertheless, once a jury finds the existence of at least one of the requisite statutory ag-gravators and proceeds to the imposition step of its deliberations, “it may consider future dangerousness in determining what sentence to impose.” Id. at 260, 122 S.Ct. 726 (Rehnquist, C.J., dissenting). This is so because under the South Carolina scheme the decision whether to impose a sentence of death is made after a consideration of the specific circumstances of the crime and all of the characteristics of the offender; the universe of appropriate considerations at this stage of the sentencing determination is unconstrained by the enumerated statutory aggravating circumstances. See State v. Owens, 346 S.C. 637, 552 S.E.2d 745, 760 (2001); Jones, 504 S.E.2d at 824 n. 1; see also Simmons, 512 U.S. at 162-63, 114 S.Ct. 2187 (plurality opinion) (noting that under South Carolina’s death penalty scheme “[o]nce the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty ... the jury is then free to consider a myriad of factors to determine whether death is the appropriate punishment” (quotation omitted) (alteration in original)). At this stage of the proceedings, a South Carolina jury is free to reject the death penalty “for any reason or no reason at all.” Shafer, 532 U.S. at 50-51, 121 S.Ct. 1263.
The Court’s decisions in Simmons and Shafer cannot be unhinged from this specific state statutory backdrop. Shafer makes this clear. In that case, South Carolina argued that Simmons no longer applied because it had adopted a new tripartite sentencing option in capital cases. Shafer, 532 U.S. at 49-50, 121 S.Ct. 1263. In rejecting this argument, the Court concluded as follows:
At the time the trial judge instructed the jury in Shafer’s case, it was indeed possible that Shafer would receive a sentence other than death or life without the possibility of parole. That is so because South Carolina, in line with other States, gives capital juries, at the penalty phase, discrete and sequential functions. Initially, capital juries serve as factfinders in determining whether an alleged aggravating circumstance exists. Once that factual threshold is passed, the jurors exercise discretion in determining the punishment that ought to be imposed. The trial judge in Shafer’s case recognized the critical difference in the two functions. He charged that “[a] statutory aggravating circumstance is a fact, an incident, a detail or an occurrence,” the existence of which must be found beyond a reasonable doubt. Turning to the sentencing choice, he referred to considerations of “fairness and mercy,” and the defendant’s “moral culpability.” He also instructed that the jury was free to decide “whether ... for any reason or no reason at all Mr. Shafer should be sentenced to life imprisonment rather than to death.”
In sum, when the jury determines the existence of a statutory aggravator, a tightly circumscribed factual inquiry, none of Simmons’ due process concerns arise. There are no “misunderstanding[s]” to avoid, no “false choice[s]” to guard against. See Simmons, 512 U.S. at 161, 114 S.Ct. 2187 (plurality opinion). *925 The jury, as aggravating circumstance factfinder, exercises no sentencing discretion itself. If no aggravator is found, the judge takes over and has sole authority to impose the mandatory minimum so heavily relied upon by the South Carolina Supreme Court. It is only when the jury endeavors the moral judgment whether to impose the death penalty that parole eligibility may become critical. Correspondingly, it is only at that stage that Simmons comes into play, a stage at which South Carolina law provides no third choice, no 30 year mandatory minimum, just death or life without parole. We therefore hold that whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina’s new scheme, due process requires that the jury be informed that a life sentence carries no possibility of parole.
Id. at 50-51, 121 S.Ct. 1263 (citations and footnote omitted) (emphasis added) (alterations in original).
Accordingly, what was at issue in Simmons and Shafer was that step in jury deliberations on sentencing in South Carolina at which the jury exercises its unfettered moral judgment to determine whether the defendant should be sentenced to either life imprisonment or death. The Court was unequivocal that South Carolina could not skew that particular process by preventing a capital defendant from presenting truthful information, either through argument or instruction, of parole ineligibility when the state raises the issue of future dangerousness. See Simmons, 512 U.S. at 175, 114 S.Ct. 2187 (O’Connor, J., concurring in the judgment) (“Capital sentencing proceedings must of course satisfy the dictates of the Due Process Clause, and one of the hallmarks of due process in our adversary system is the defendant’s ability to meet the State’s case against him.” (citation and quotation omitted)); id. at 177, 114 S.Ct. 2187 (O’Connor, J., concurring in the judgment) (“When the State seeks to show the defendant’s future dangerousness, however, the fact that he will never be released from prison will often be the only way that a violent criminal can successfully rebut the State’s case.”).[2]
*926 The rule announced in Simmons and Shafer, however, is not applicable to Oklahoma’s death penalty scheme unless the jury specifically finds during the eligibility step in deliberations that a defendant is a continuing threat to society, a statutory aggravating circumstance to be weighed against any mitigating circumstances during the imposition step of deliberations. Unlike South Carolina, Oklahoma is a weighing state. See Duckett v. Mullin, 306 F.3d 982, 1001 n. 9 (10th Cir.2002). The eligibility step of jury deliberations in Oklahoma is much like the eligibility step in South Carolina. Oklahoma juries have three sentencing options upon finding a defendant guilty of first degree murder: death, life imprisonment without the possibility of parole, or life imprisonment. Okla. Stat. Ann. tit. 21, § 701.9(A).[3] A death sentence is not appropriate, however, unless the jury finds that the prosecution proved beyond a reasonable doubt the existence of at least one statutory aggravating circumstance. Id. § 701.11. Unlike in South Carolina, however, future dangerousness is a statutory aggravating circumstance in Oklahoma. Id. § 701.12(7).
If the jury finds the existence of a statutory aggravating circumstance, it moves on to the actual sentencing decision, the imposition step. The process an Oklahoma jury utilizes to arrive at its ultimate sentencing determination is vastly different from the system employed in South Carolina. In Oklahoma, the jury’s task at this stage is more limited than in South Carolina. An Oklahoma jury is to determine whether all of the statutory aggravating circumstances proved by the proseeution beyond a reasonable doubt outweigh any mitigating circumstances proved by the defendant. Id. § 701.11 (“Unless at least one of the statutory aggravating circumstances enumerated in this act is [found beyond a reasonable doubt] or if it is found that any such aggravating circumstance is outweighed by the finding of one or more mitigating circumstances, the death penalty shall not be imposed.” (emphasis added)). Mollett’s jury was so instructed. See Jury Instruction 52 (“If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed.” (emphasis added)). Accordingly, unlike the open-ended imposition step in deliberations in South Carolina, where the jury is free to consider matters in aggravation not set out in the list of statutory aggravating circumstances, the jury’s task in Oklahoma is narrowly circumscribed to determining whether the aggravating circumstanee(s) proved by the prosecution beyond a reasonable doubt outweigh the defendant’s evidence in mitigation. Okla. Stat. Ann. tit. 21, § 701.11; Irvin v. State, 617 P.2d 588, 598 (Okla.Crim.App.1980).
Although South Carolina is a nonweigh-ing state and Oklahoma is a weighing state, both require the jury to exercise its moral judgment to determine what is the appropriate penalty. The information the jury can consider in the two states in reaching that moral judgment is, however, *927 vastly different. Mollett’s jury was instructed to undertake a weighing of the aggravating circumstances proved by the prosecution against the mitigating circumstances proved by Mollett; it was not allowed to utilize any other aggravating circumstances in arriving at its sentence. Having previously concluded that the prosecution failed to prove that Mollett was a continuing threat to society, future dangerousness was not at issue at the imposition step in the jury deliberations in Mollett’s sentencing proceeding.[4] Because, as noted above, Simmons was clearly focused on the presentation of a false choice to the jury at the imposition step, thereby skewing the jury’s moral judgment, Simmons simply does not speak to the circumstances of this case. See Shafer, 532 U.S. at 51, 121 S.Ct. 1263 (“[W]hen the jury determines the existence of a statutory aggravator, a tightly circumscribed factual inquiry, none of Simmons’ due process concerns arise.... The jury, as aggravating circum *928 stance factfinder, exercises no sentencing discretion itself.... It is only when the jury endeavors the moral judgment whether to impose the death penalty that parole eligibility may become critical.” (emphasis added)).[5]
Although no Simmons violation occurred in this case because the matter of future dangerousness was not considered during the weighing or imposition step in the jury deliberations, the jury was nevertheless presented with an incomplete picture when the trial court instructed it that the matter of parole eligibility was beyond its purview. As a consequence, in deciding the factual question of whether Mollett was a continuing threat to society, the jury was denied key information regarding the possibility of Mollett’s future release from prison. This independent due process violation, however, occurred at the eligibility step, rather than the imposition step in deliberations. This distinction is not academic. A Simmons violation occurs, if at all, only at the imposition step in jury deliberations, a step when the jury is exercising its unfettered moral judgment as to an appropriate punishment.[6] See id. For those reasons set out above, see supra note 2, it is virtually impossible to determine whether such an error is harmless. When a due process error involving false choice occurs at the eligibility step in deliberations in Oklahoma, however, the error is necessarily harmless if the jury ultimately rejects the continuing threat aggravator. At that point, it is clear that the error did not affect the jury’s eligibility determination. Because Oklahoma is a weighing state, the matter then drops out of consideration, and cannot affect the jury’s moral judgment during the weighing of aggravating and mitigating circumstances, the imposition step in Oklahoma.
The majority asserts that this dissent is built on faulty logic. In particular, the majority asserts as follows: (1) the dissent fails to recognize that Simmons and its progeny apply to Oklahoma’s death penalty scheme and “ignores the clear language of the Simmons line of cases that it is the prosecution’s placing the defendant’s future dangerousness at issue that potentially creates the ‘false choice,’ ” Majority Op. at 916-17; (2) the dissent unduly compartmentalizes the eligibility and imposition steps of jury deliberation in analyzing whether a Simmons violation occurred in this case, id. at 917-18; (3) the Oklahoma and South Carolina death penalty scheme are more alike than the dissent recognizes, *929 id. at 919-20; and (4) the approach adopted by the dissent “unsoundly limits the evidence that may be properly considered” by the jury, id. at 920-21. As set out below, none of the majority’s criticisms of this dissenting opinion are convincing.
Citing to the Oklahoma Court of Criminal Appeals’ opinion in Williams v. State, 31 P.3d 1046, 1050 (Okla.Crim.App.2001) (“Williams I”), the majority simply asserts that “there is no question that Simmons and its progeny apply to Oklahoma’s [death penalty] scheme.” Majority Op. at 916-17. Williams I, however, does not speak to the circumstances of this case. As was the case in this court’s decision in Johnson, 254 F.3d at 1164-66, the Williams I jury specifically found that the defendant was a continuing threat to society. Williams v. State, 22 P.3d 702, 732 (Okla.Crim.App.2002). For exactly those reasons set out above in discussing Johnson, see supra note 5, Williams I does not compel the conclusion that Simmons and its progeny are implicated by the circumstances of this ease.
The majority further asserts that this dissent “ignores the clear language of the Simmons line of cases that it is the prosecution’s placing the defendant’s future dangerousness at issue that potentially creates the ‘false choice.’ ” Majority Op. at 917. As set out above, however, each of the cases in the Simmons line deals with the nonweighing death penalty system in South Carolina. Unlike the situation in Simmons, Shafer, and Kelly, the jury here specifically found that the prosecution had failed to prove, under the requisite standard, that Mollett was a continuing threat to society. The jury was thus precluded from considering the matter during its deliberations on whether to impose the death penalty. For just this reason, the majority is wrong in asserting that Simmons applies in exactly the same way to both South Carolina’s nonweighing death penalty scheme and Oklahoma’s weighing death penalty scheme. See Majority Op. at 917.
The majority next complains that “the dissent’s rigid division of the jury’s deliberations into an ‘eligibility step’ and an ‘imposition step’ misreads Simmons and Shafer.” Majority Op. at 917.[7] According to the majority, when the jury asked about the meaning of life without parole, it was possible that the jury “had proceeded to weighing aggravating and mitigating circumstances to determine if the death penalty was warranted.” Id. Such a state of affairs is possible, however, only if the jury disregarded its instructions. In Instruction 47, the jury was told that its first task during sentencing deliberations “was to determine whether at the time this crime was committed any one or more of the [specifically alleged] aggravating circumstances existed beyond a reasonable doubt.” Instruction 49 informed the jury that “[aggravating circumstances are those which increase the guilt or enormity of the offense. In determining which sentence to impose in this case, you may only consider those aggravating cir *930 cumstances set forth in these instructions.” Instruction 49 further informed the jury that it was not empowered to consider a death sentence unless it unanimously found the existence beyond a reasonable doubt of at least one aggravating circumstance. Instructions 50 and 51 defined mitigating circumstances for the jury and set out a list of fourteen mitigating circumstances supported by Mollett’s evidentiary submissions. Finally, Instruction 52 instructed the jury that if it found beyond a reasonable doubt the existence of at least one specifically charged aggravating circumstances, it must weigh only those particular aggravating circumstances proved beyond a reasonable doubt against any mitigating circumstances proved by Mollett; only if those aggravating circumstances outweighed Mollett’s evidence in mitigation was the jury empowered to impose a death sentence.
As should be clear from this recitation, it is the jury instructions given in this case, rather than some artificial construct from this dissenting opinion, that delineated the steps the jury was required to take during its sentencing deliberations and restricted the matters it could consider at each step of those deliberations. See Majority Op. at 917-18 (recognizing that “the jury here was required to determine the existence of the alleged aggravating factors before proceeding to the question of whether to impose the death penalty”). Despite these clear instructions, however, the majority posits that the jury may have sent out its question when it was undertaking the weighing process. Id. at 917 (“Thus, when the jury asked about the meaning of life without parole, the judge did not know whether the jury was still debating the existence of the continuing threat and other aggravators or whether it had proceeded to weighing aggravating and mitigating circumstances to determine if the death penalty was warranted.” (emphasis added)). Because the jury found the prosecution had not proved beyond a reasonable doubt that Mollett was a continuing threat to society, the only way the majority’s supposition could be true is if the jury ignored the specific instruction that during the weighing process it was confined to matters in aggravation that the prosecution had proved beyond a reasonable doubt. As noted above, such a hypothesis flies in the face of the strong presumption that juries act in accord with their instructions. Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000).[8]
*931 Next, the majority criticizes this dissent for failing to recognize that a jury in Oklahoma can decline to impose a death sentence even if it determines that the aggravating circumstances outweigh the mitigating circumstances. Majority Op. at 918-19. From this fact the majority makes the illogical leap to the conclusion that there are no legally significant differences between the Oklahoma and South Carolina death penalty schemes for purposes of Simmons and Shafer. Id. The problem with the majority’s assertion, of course, is that it is not supported by a single citation to authority supporting the proposition that once an Oklahoma jury completes the weighing process it is thereafter free to consider the universe of possible aggravating circumstances in deciding whether to impose a death sentence. Certainly the majority cannot cite to any such instruction given to the jury in this ease.[9] In fact, Mollett’s jury was specifically informed, in Instruction 49, that it was to “consider only those aggravating circumstances set forth in these instructions.” Furthermore, as set out above, the jury was specifically instructed, in Instruction 52, that in deciding whether a death sentence is appropriate, it was to consider only those aggravating circumstances proved by the prosecution beyond a reasonable doubt. Accordingly, although the jury in this case had the power to decline to impose a death sentence even after finding the aggravating circumstances outweighed the mitigating circumstances, it could not have, acting consistently with its instructions, imposed the death penalty for the reason that Mollett was a continuing threat to society.
Finally, the majority asserts that the approach advocated in this dissent “unsoundly limits the evidence that may properly be considered” by the jury. Majority Op. at 919. According to the majority, the jury is entitled to consider, apparently without limitation, all evidence presented at trial in determining what sentence a defendant should receive. Id. at 919-20. This would include, according to the majority, continuing threat evidence despite the jury’s determination that the prosecution did not prove beyond a reasonable doubt the existence of that aggravator. Id. In support of this assertion, the majority relies on Parks v. State, 651 P.2d 686, 694 (Okla.Crim.App.1982), Lockett v. Ohio, 438 U.S. 586, 606, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Justice O’Connor’s concurring opinion in California v. Brown, 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). None of these cases support the majority’s broad assertion that Mollett’s jury was empowered to consider continuing threat evidence during the imposition step of deliberations, after having rejected that aggravator at the eligibility step.
In Parks, the Oklahoma Court of Criminal Appeals rejected a challenge to a jury instruction which specifically incorporated into the sentencing stage of the trial all evidence presented during the guilt stage of the trial. 651 P.2d at 694. The court simply cited to Lockett and noted that in arriving at a sentence the jury was free *932 to consider “not only the defendant’s record and character, but any circumstances of the offense.” Id. There is nothing in Parks to indicate, however, that the jury is free to consider this evidence outside of the context provided in the jury instructions on sentencing. As noted above, in this case the jury was specifically instructed not to consider Mollett’s future dangerousness during the weighing stage of deliberations unless it first found the prosecution had proved the existence of the aggravator beyond a reasonable doubt. Because the jury ultimately found that the prosecution had not proved Mollett was a continuing threat, this court must presume that the jury followed its instructions and did not consider continuing threat evidence during its weighing process. Angelone, 528 U.S. at 234, 120 S.Ct. 727. Parks merely stands for the proposition that incorporation of guilt stage evidence into the sentencing stage, and the use of that evidence by both the prosecution and defense to make their case within the confines of the jury instructions, is in accord with the United States Constitution. Parks does not support the majority’s view that the case somehow withdraws jury instructions which prohibit the consideration of some of the incorporated evidence.
This view of Parks is confirmed by the Oklahoma Court of Criminal Appeals’ exclusive reliance on Lockett in setting out this rule. In Lockett, the Supreme Court addressed the constitutionality of an Ohio death penalty scheme which seriously restricted the mitigating circumstances that a capital defendant could present at trial. 438 U.S. at 597, 98 S.Ct. 2954 (plurality opinion). In striking down Ohio’s system as unconstitutional, the court repeatedly noted that the fatal flaw in the system was that it limited the matters in mitigation which could be considered by the sentencer.[10] Because the Ohio system did not allow the jury to consider the characteristics of the defendant and the circumstances of the crime that were potentially mitigating, the Supreme Court concluded Ohio’s system violated the Eighth and Fourteenth Amendments. Id. at 607-09, 98 S.Ct. 2954.
Likewise, the question in Brown was whether an instruction informing the jury that it must not be swayed by sympathy for the defendant violated a capital defendant’s Eighth Amendment right to present all “relevant mitigating evidence regard- *933 big his character or record and any of the circumstances of the offense.” Id. at 541, 107 S.Ct. 837 (quotation omitted) (emphasis added); see also id. at 544, 107 S.Ct. 837 (O’Connor, J., concurring) (“The issue in this case is whether an instruction designed to satisfy the principle that capital sentencing decisions must not be made on the mere whim, but instead on clear and objective standards, violates the principle that the sentencing body is to consider any relevant mitigating evidence.”). Accordingly, when both the Brown majority and Justice O’Connor discuss the need for the jury’s sentencing decision to be a reasoned moral response to the defendant’s background, character, and crime, they are only discussing the defendant’s Eighth Amendment right to present mitigation evidence.
Nothing in Brown or Lockett supports the notion that a state is precluded from designing its death penalty scheme to restrict the matters in aggravation that a jury can consider in deciding whether to impose a sentence of death. As demonstrated above, Oklahoma has done just that, mandating that juries not consider matters in aggravation in arriving at a sentencing decision unless the prosecution has proved the existence of those aggravating factors beyond a reasonable doubt. Okla. Stat. Ann. tit. 21, § 701.11. The jury in this case was so instructed. The majority is simply wrong in asserting that system is in conflict with the Supreme Court’s decision in Lockett or Brown.
The majority has effectively converted Oklahoma into a nonweighing state, thereby wiping away significant protections for capital defendants in Oklahoma. The majority has rewritten Oklahoma law so that juries are now free to consider, in arriving at an ultimate sentence, matters in aggravation not proved beyond a reasonable doubt by the prosecution. See Majority Op. at 919-20.
Moreover, the majority’s assertions in this regard fundamentally misapply Simmons. As is made clear in Justice O’Con-nor’s opinion concurring in the judgment in Simmons,[11] the rationale underlying the decision is narrowly directed to allowing a capital defendant to utilize the most powerful evidence available to overcome the prosecution’s assertion that he is a continuing threat to society. See 512 U.S. at 177, 114 S.Ct. 2187 (O’Connor, J., concurring in the judgment). According to Justice O’Connor,
When the State seeks to show the defendant’s future dangerousness ... the fact that he will never be released from prison will often be the only way that a violent criminal can successfully rebut the State’s case. I agree with the Court that in such a case the defendant should be allowed to bring his parole ineligibility to the jury’s attention — by way of argument by defense counsel or an instruction from the court — as a means of responding to the State’s showing of future dangerousness.
Id. (O’Connor, J., concurring in the judgment). As cogently noted by Justice O’Connor, a defendant’s future parole status is clearly relevant to the question whether he is likely to be a future danger to society at large. The majority is misguided in asserting that there is a similar link between Mollett’s future parole status and any of the mitigating circumstances submitted by Mollett to the jury. Majority Op. at 919. Mollett submitted the following fourteen mitigating circumstances to the jury:
*934 1. Defendant loves and is thoughtful of his parents and his other relatives.
2. Defendant is helpful to his parents and other relatives.
3. Defendant is a hard worker.
4. Defendant is kind to animals.
5. Defendant loves people.
6. Defendant is a good big brother.
7. Defendant is compassionate to his family.
8. Defendant is gentle and caring to his sister’s children.
9. Defendant has been helpful in apprehending a person who broke the law.
10. He is generous and kind to his friends.
11. Defendant has a family that loves and cares for him.
12. Defendant attempted to help a motorist hurt in an accident.
13. Defendant is industrious and has always been employed.
14. He struggled to succeed and graduate from high school despite attending school for the blind.
I fail to see how Mollett’s parole status is even remotely relevant to the existence of any of these proposed mitigating factors.
In arguing that a Simmons violation occurred in this case because this court “cannot know the extent to which the prosecution’s evidence and argument regarding Mr. Mollett’s future dangerousness influenced the jury’s conclusion that a particular mitigating circumstance ... did not outweigh the other aggravators,” the majority improperly disconnects the rule announced in Simmons from the due process underpinnings Justice O’Connor set out as supporting the rule in her separate opinion. The reason that a defendant’s future parole status is relevant at the imposition step of jury deliberations is because it is the most powerful evidence to rebut the prosecution’s case that the defendant will constitute a future threat to society at large. Simmons, 512 U.S. at 177, 114 S.Ct. 2187 (O’Connor, J., concurring in the judgment). That is, even if the defendant is utterly vile and lacking in compassion, it is unlikely that he will ever be a danger to society at large if there is no chance that he will be released from prison. Accordingly, evidence regarding future parole status is relevant and admissible under Simmons not because it has any power to rebut the prosecution’s argument that the defendant is a vile and dangerous individual, but because it strongly rebuts any prosecution argument that the defendant will ever be able to bring his dangerous tendencies to bear on society at large. Id. Once again, it appears more likely the majority is announcing a limitless right to present the question of parole status to the jury in every case, rather than applying the rule set forth by the Supreme Court in Simmons. See supra note 4.
In sum, no Simmons violation occurred in this case. In addition, the due process violation that occurred during the eligibility step in deliberations is necessarily harmless because the jury concluded Mol-lett was not a continuing threat to society. Because the majority concludes to the contrary, I respectfully dissent.[12]

. It must be noted that the only material quoted from Shafer that the majority did not emphasize is the language indicating that the Court was announcing its rule with regard to " 'South Carolina’s new scheme.’ ” Majority Op. at 913 (quoting Shafer, 532 U.S. at 51, 121 S.Ct. 1263).

. In a portion of the majority opinion purportedly declining to address the issue of harmless error, the majority notes that the Supreme Court has never performed a harmless error analysis after having found a Simmons error. See Majority Op. at 921 n. 6. Because, as set out below, a Simmons error did not occur in this case, it is unnecessary to address the question whether a Simmons error is subject to harmless error review. In light of the nature of the due process problem identified in Simmons, however, it is not surprising that the Court has never subjected such an error to a harmless-error analysis. As noted above, Simmons and Shafer are narrowly focused on the presentation of a "false choice” to the jury during that step in deliberations when the jury is to exercise its unfettered moral judgment in deciding whether to impose a death sentence. Furthermore, the Court has recognized that truthful information regarding parole ineligibility is often "the only way that a violent criminal can successfully rebut the State’s” assertion of future dangerousness. Simmons v. South Carolina, 512 U.S. 154, 177, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (O’Connor, J., concurring in the judgment). In these circumstances, it is hard to see how a true Simmons error could ever be harmless.
The problem in this case, as explicated below, is that the majority has expanded what constitutes a Simmons error well beyond the context of the decisions in Simmons and Shafer. As a consequence, in this circuit, Simmons errors will now comprise not only a false choice regarding future dangerousness during the unfettered moral-judgment stage of a nonweighing death penalty proceeding, but also a false choice during the imposition step in a death penalty proceeding in a weighing state like Oklahoma, despite a jury finding that the defendant was not a continuing threat to society. Simmons and Shafer simply do not speak to the particular circumstances *926 of this case. Nor do Simmons and Shafer speak to the question whether the error that occurred in this case is harmless. See infra.

. This court has held that instructing on these three options, without elaboration, satisfies Simmons. Johnson v. Gibson, 254 F.3d 1155, 1165 (10th Cir.2001). Furthermore, in response to an inquiry by the jury as to the meaning of life imprisonment without the possibility of parole, the trial court may simply refer the jury back to the instructions given. Id.

. In the process of declining to decide whether the purported Simmons violation in this case was harmless, the majority asserts as follows: (1) the trial judge’s response to the jury’s question about parole eligibility "left the prosecutor’s warning about the danger of Mr. Mollett emerging from prison front and center for the jury to consider in its deliberations on whether to sentence Mr. Mollett to death," Majority Op. at 922; and (2) the trial court’s erroneous instruction made it more likely that the jury found the 'existence of the other two aggravating circumstances alleged by the prosecution in this case, id. These assertions demonstrate a fundamental misapplication of Oklahoma’s death penalty system.
The prosecutor’s warnings about the danger of Mollett emerging from prison simply do not relate in any way to the questions whether the murder was "especially heinous, atrocious, or cruel," or whether the murder was committed "to avoid lawful arrest or prosecution.” Instead, the prosecutor's arguments are relevant only to the factual question whether Mollett was likely to be a continuing threat to society at large. The jury concluded, as a matter of fact, that the prosecution had not proved Mollett would be a future danger to society at large. Having so concluded, the jury was instructed that the question of future dangerousness was to play no further role in its deliberations. See Jury Instruction 52 ("If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that any such aggravating circumstance or circumstances outweighs the finding of one or more mitigating circumstances, the death penalty shall not be imposed.” (emphasis added)). The majority’s assertion that the jury continued to consider the issue at the imposition step of its deliberations ignores the strong presumption that juries act in accord with their instructions. Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000).
More importantly, the majority's musings about potential harm in this case threaten to convert Simmons into an almost limitless truth-in-sentencing case. The majority seems to assert that Simmons is implicated in this case because "at least some of the continuing threat evidence was relevant to the two aggra-vators found by the jury.” Majority Op. at 922. It is certainly true that evidence relating to the brutal nature of a murder is potentially relevant to both the heinous, atrocious, or cruel and continuing threat aggravating circumstances. See Murphy v. State, 47 P.3d 876, 887-88 (Okla.Crim.App.2002) (relying in part on brutal nature of the crime in concluding that sufficient evidence supported the continuing threat aggravating circumstance). Under the majority’s theory, however, a defendant in Oklahoma would be entitled to a jury instruction about parole eligibility even if the prosecution did not allege the continuing threat aggravating circumstances, so long as any of the evidence adduced in support of any other aggravating circumstance might also be relevant to future dangerousness. Unlike the majority, the Supreme Court does not read its opinion in Simmons as establishing such a broad rule. See Kelly v. South Carolina, 534 U.S. 246, 254 n. 4, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002) (noting that the Court had not yet decided this question). Thus, the majority appears to be creating a new, substantive rule of criminal procedure, rather than simply applying Simmons. In such a circumstance, a Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), analysis is necessary.

. This court’s decision in Johnson is not to the contrary. In Johnson, the jury was improperly instructed about parole eligibility and thereafter found that the continuing threat aggravator was proved beyond a reasonable doubt. 254 F.3d at 1164-65, 1159. Accordingly, at the imposition step in deliberations, the jury considered the fact that the defendant was a future danger to society, including its misconception about the defendant’s parole eligibility, in exercising its moral judgment as to whether the aggravating circumstances outweighed the mitigating circumstances. I certainly agree that a Simmons violation occurred under those circumstances. In this case, on the other hand, when the jury concluded that Mollett was not a continuing threat to society, the matter dropped out of consideration, leaving the jury to weigh only the heinous nature of the crime and the murder-committed-to-avoid-prosecution aggravator against Mollett’s evidence in mitigation.

. In both a weighing state and nonweighing state, the jury is necessarily exercising its moral judgment during the imposition step of deliberations, the only difference being how or if the jury’s discretion is channeled or limited. As set out above, at the imposition step in South Carolina, the jury is free to consider all evidence bearing on the circumstances of the murder and the defendant’s character. In Oklahoma, however, the jury is to weigh only those aggravating circumstances proved by the prosecution beyond a reasonable doubt against the defendant's evidence in mitigation.

. This dissent assumes that the majority does not take issue with the two-step process in jury deliberations: the eligibility step and the imposition step. These steps are real and were specifically acknowledged in Shafer:
South Carolina, in line with other States, gives capital juries, at the penalty phase, discrete and sequential functions. Initially, capital juries serve as factfinders in determining whether an alleged aggravating circumstance exists. Once that factual threshold is passed, the jurors exercise discretion in determining the punishment that ought to be imposed. The trial judge in Shafer’s case recognized the critical difference in the two functions.
532 U.S. at 50, 121 S.Ct. 1263.

. Recognition that the jury instructions in this case, pursuant to Oklahoma law, directed the jury to analyze the propriety of imposing a death sentence by undertaking both an eligibility step and an imposition step during deliberations does not, as asserted by the majority, "preclude!] the jury from revisiting earlier findings or beginning the deliberative process anew at any time.” Majority Op. at 918. If, at any point, the jury was dissatisfied with its deliberations, it could begin deliberations anew, as long as it did so within the confines of the jury instructions; there is nothing in this dissent that would lead to a contrary conclusion. In actuality, it is the majority that does damage to the Oklahoma death penally scheme by continuing to assert that the jury in this case, in direct derogation of its instructions, was free to consider continuing threat evidence during the weighing process, despite having found that the prosecution had not proved the existence beyond a reasonable doubt of the continuing threat ag-gravator. Id. at 918-19.
What makes the majority's assertion particularly puzzling, however, is that Mollett's jury did not change its mind about the continuing threat aggravator. As clearly reflected in the special verdict form, the jury specifically found, upon its oath, that the prosecution had not proved that Mollett was a continuing threat to society. Unless the majority is implying that the special verdict form is not an accurate account of the jury’s findings, an assertion utterly lacking in record support, it *931 is unclear how the majority’s arguments are even remotely implicated in this case.

. The current Oklahoma uniform jury instruction cited in the majority opinion, see Majority Op. at 918 n. 5, certainly does not support this proposition. It does not indicate that the jury is free to consider any matter it wants in arriving at an appropriate sentence. Instead, it simply indicates that the jury is free to impose a life sentence even if it finds that the aggravating circumstances outweigh the mitigating circumstances. In any event, the uniform jury instruction referenced by the majority was not given to the jury in this case.

. Lockett v. Ohio, 438 U.S. 586, 597, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ("We find it necessary to consider only her contention that her death sentence is invalid because the statute under which it was imposed did not permit the sentencing judge to consider, as mitigating factors, her character, prior record, age, lack of specific intent to cause death, and her relatively minor part in the crime.”); id. at 604, 98 S.Ct. 2954 ("[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” (footnote omitted) (emphasis in original)); id. at 605, 98 S.Ct. 2954 ("There is no perfect procedure for deciding in which cases governmental authority should be used to impose death. But a statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant’s character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty.”); id. at 608, 98 S.Ct. 2954 ("The limited range of mitigating circumstances which may be considered by the sentencer under the Ohio statute is incompatible with the Eighth and Fourteenth Amendments. To meet constitutional requirements, a death penalty statute must not preclude consideration of relevant mitigating factors.”).

. "Justice O’Connor’s three Justice concurrence [in Simmons ] represented the narrowest grounds for a holding and, as such, represents the holding of the Court.” Smallwood v. Gibson, 191 F.3d 1257, 1280 n. 15 (10th Cir.1999).

. In granting the writ, the district court also concluded that Mollett's counsel had provided constitutionally ineffective assistance. Because the majority affirms the district court solely on the basis of Simmons, it would be waste of judicial resources for this dissent to *935 proceed to the question whether Mollett is entitled to relief on the alternative ground of ineffective assistance. Accordingly, like the majority, I offer no opinion on the propriety of the district court's conclusion that counsel was constitutionally ineffective.